David C. Burger (DB-8666)
ROBINSON BROG LEINWAND GREENE
    GENOVESE & GLUCK P.C.
**Attorneys for Plaintiff**
1345 Avenue of the Americas
New York, New York 10105-0143
(212) 603-6300



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE EDWARD ANDREWS GROUP INC.,      :   07 CIV 4607

        Plaintiff,                                                :

    - against -                                                  :   <u>COMPLAINT</u>

ADDRESSING SERVICES COMPANY, INC.,  :

        Defendant.                                            :

---x

Plaintiff, The Edward Andrews Group Inc. ("EAG"), by its attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., as and for its complaint, alleges as follows:

### THE PARTIES

1. Plaintiff EAG is a New York corporation with its principal place of business located at 708 Third Avenue, New York, New York 10017.

2. Upon information and belief, Defendant Addressing Services Company, Inc. ("ASCO" or the "Company") is a Connecticut corporation with its principal place of business located at 225 Episcopal Road, Berlin, Connecticut 06037.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) in that the parties to this action are citizens of different states and the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2).

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

5. ASCO is engaged in the business of direct mailing.

6. On or about January 13, 2004, the parties executed two written agreements: (a) a consulting agreement, dated January 13, 2004 ("Consulting Agreement"); and (b) an exclusive financial advisor agreement, dated January 13, 2004 ("Investment Banking Agreement"). Copies of the Consulting Agreement and the Investment Banking Agreement are attached hereto as Exhibits A and B, respectively.

7. The execution of the Consulting Agreement and the Investment Banking Agreement each constituted consideration, in part or in whole, for the other.

8. The Consulting Agreement and the Investment Banking Agreement were both signed by Michael Rittlinger ("Rittlinger") as an officer and the sole shareholder of ASCO.

9. In prior litigation concerning the Consulting Agreement, summary judgment was entered in favor of EAG with respect to monies owed by ASCO to EAG. After the entry of a final judgment against ASCO in the amount of $495,786.25, the prior litigation was settled. See The Edward Andrews Group Inc. v. Addressing Services Company, Inc., 04 Civ. 6731 (LTS) (S.D.N.Y.) (the "Prior Litigation").

10. Pursuant to the Investment Banking Agreement, EAG was retained as, <u>inter alia</u>, the "exclusive financial advisor in connection with all Extraordinary Transactions involving the Company [<u>i.e.</u> ASCO]."

11. The Investment Banking Agreement provides for the payment of a cash fee by ASCO to EAG, as follows:

> "As consideration for EAG's services hereunder, upon successful completion by the Company or any of the Shareholders of an Extraordinary Transaction with any party, <u>the Company shall pay EAG a cash fee (the 'Success Fee') equal to 4% of the aggregate Consideration or value from such Extraordinary Transaction received by the Company or the Shareholders. Notwithstanding the above formula, the Success Fee shall be a minimum of $100,000.</u> The Success Fee shall be due and payable in cash at the closing of the transaction and a condition precedent to closing." (emphasis added)

Investment Banking Agreement, at p. 1, ¶ 2.

12. The Investment Banking Agreement defines the term "Extraordinary Transaction" as follows:

> "The term 'Extraordinary Transaction' shall be deemed to include, but not limited to, the sale of the Company or any of its assets, an initial public offering, or any transaction entered into by the Company or the Shareholders out of the ordinary course of its business."

Investment Banking Agreement, at p. 2, ¶ 2.

13. The Investment Banking Agreement defines the term "Consideration" as follows:

> "The term 'Consideration' shall be deemed to include, but not limited to, (i) the amount of equity investment(s) in the Company, (ii) loans to the Company, (iii) proceeds received from the sale of the assets of the Company, (iv) the assumption (whether through the sale of assets or

3

> securities) of all indebtedness (which includes capital leases), (v) proceeds received by the Shareholders of the Company from the sale of securities, (vi) distributions, dividends and bonuses of any kind to Shareholders after the date of this Agreement, but only to the extent that the aggregate of all such distributions, dividends, dividends [sic] and bonuses exceed $200,000 and (vii) stock, cash, debt instruments, or anything of value received by the Company or the Shareholders in any merger, consolidation or any Extraordinary Transaction."

Investment Banking Agreement, at p. 2, ¶ 2.

14. In October, 2005, it came to EAG's attention that ASCO might be exploring the potential sale of its business.

15. By a letter from EAG to ASCO, dated October 10, 2005 ("October 10, 2005 Letter"), EAG provided notice to ASCO, inter alia that:

> "Notwithstanding the fact that we are in a dispute over our Consulting Agreement, dated January 13, 2004, EAG is ready, willing and able to (i) provide financial and strategic advice and (ii) introduce the Company to potential acquirors and/or strategic or financial partners, if in fact you are considering an Extraordinary Transaction (as defined in the Investment Banking Agreement). I hope you choose to utilize EAG's expertise and contacts. Please be aware, however, that even if you choose not to let EAG assist ASCO, pursuant to our Investment Banking Agreement, ASCO and Michael Rittlinger will still be obligated to pay EAG a Success Fee (as defined therein) if ASCO consummates an Extraordinary Transaction."

October 11, 2005 Letter, copy attached hereto as Exhibit C.

16. ASCO did not reply to the October 10, 2005 Letter.

17. By a letter from EAG to ASCO, dated November 3, 2005 ("November 3, 2005 Letter"), EAG, inter alia, reiterated that it was ready, willing and able to provide services pursuant to the Investment Banking Agreement, and that a Success Fee would be due to EAG

4

with respect to any Extraordinary Transaction whether or not ASCO chose to utilize EAG's services. A copy of the November 3, 2005 Letter is attached hereto as Exhibit D.

18. ASCO did not reply to the November 3, 2005 Letter.

19. The Investment Banking Agreement has a term ranging from twenty-four months to forty-eight months (with possible further extension) after the termination of any relationship between ASCO and Jeffrey Klein ("Klein"), as follows:

> "EAG shall be the Company's exclusive financial advisor from the date hereof until 24 months following the termination of any relationship between the Company and Jeffrey Klein (the 'Period'). A Success Fee, as described in Section 2 hereof, shall be paid to EAG if there is an Extraordinary Transaction involving the Company (a) during the Period (which shall be extended if discussions are in progress at that time) or (b) during the twenty four months following the Period (which shall be extended if active negotiations are in progress at that time), if EAG, the Company or any Shareholder had any contact with such entity during the Period."

Investment Banking Agreement, at p. 3, ¶ 6.

20. Rittlinger was deposed on April 15, 2005 in the Prior Litigation. Rittlinger testified, inter alia, that Klein was continuing to perform services for ASCO as of April 15, 2005, and that it was anticipated that Klein would continue to perform services for ASCO until September, 2005.

21. Klein was deposed as a non-party witness on April 25, 2005 in the Prior Litigation. Klein testified, inter alia, that he and Rittlinger had reached a mutual understanding and agreement that he would continue to provide consulting services to ASCO through August 2005, and that his duties and responsibilities would continue unchanged through August 2005.

22. On or about March 16, 2007, a press release was issued by Blue Point Capital Partners ("Blue Point") stating, inter alia, that Blue Point "has recapitalized [ASCO]" and describing the transaction as Blue Point's "acquisition of ASCO."

23. The transaction between ASCO and Blue Point that occurred on or about March 16, 2007 was an Extraordinary Transaction, as that term is defined in the Investment Banking Agreement.

24. The initial twenty-four month Period under the Investment Banking Agreement extended to at least April 15, 2007, based on Rittlinger's deposition testimony that Klein was performing services for ASCO as of April 15, 2005.

25. Since negotiation between ASCO and Blue Point occurred during the initial twenty-four month Period of the Investment Banking Agreement, the term of the Investment Banking Agreement was extended for an additional twenty-four month period, through at least April 15, 2009. See Investment Banking Agreement, at p. 3, ¶ 6(b).

26. The transaction between ASCO and Blue Point that occurred on or about March 16, 2007, was within the initial Period of the Investment Banking Agreement, and within the twenty-four month extension of that Period, pursuant to the provisions of the Investment Banking Agreement.

27. Beginning in or about March, 2007, EAG requested that ASCO provide it with documentation identifying the nature and terms of the transaction between ASCO and Blue Point, but ASCO has failed and refused to provide any such documentation.

28. EAG has demanded that ASCO comply with its obligations under the Investment Banking Agreement to pay EAG a fee based on the transaction between ASCO and Blue Point, but ASCO has failed and refused to pay any fee to EAG.

29. Upon information and belief, the transaction between ASCO and Blue Point involved Consideration (as that term is defined in the Investment Banking Agreement) in excess of $10 million.

### FOR A FIRST CLAIM FOR RELIEF
### (Breach of Contract)

30. EAG incorporates the allegations of paragraphs 1 through 29 above.

31. EAG has performed, and/or has proffered its performance of, all of its obligations under the Investment Banking Agreement.

32. ASCO breached the Investment Banking Agreement by failing to pay monies owed to EAG by ASCO pursuant to the terms of the Investment Banking Agreement.

**33.** By reason of the foregoing, ASCO is indebted to EAG in the minimum amount of $100,000.00, and, upon information and belief, in an amount exceeding $400,000.00, together with interest thereon.

### FOR A SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

34. EAG incorporates the allegations of paragraphs 1 through 29 and 31 through 33 above.

35. EAG entered into the Consulting Agreement and relinquished other rights and claims based, at least in part, on ASCO's simultaneous execution of the Investment Banking Agreement including, but not limited to, the provisions thereof which require ASCO to pay a Success Fee to EAG.

36. Pursuant to the terms of the Investment Banking Agreement, EAG was ASCO's exclusive financial advisor in connection with all Extraordinary Transactions involving ASCO.

37. EAG gave repeated written notice to ASCO that EAG was ready, willing and able to provide services under the Investment Banking Agreement, and that the Success Fee defined in the Investment Banking Agreement would be owed by ASCO to EAG if an Extraordinary Transaction involving ASCO was completed, regardless of whether or not ASCO utilized EAG's proffered services.

38. ASCO did not choose to utilize EAG's proffered services.

39. ASCO never responded to, nor challenged, EAG's repeated notices that ASCO would owe EAG a Success Fee under the Investment Banking Agreement for any completed Extraordinary Transaction regardless of whether or not ASCO utilized EAG's proffered services.

40. EAG would never have entered into the Consulting Agreement and would never have relinquished other rights and claims if ASCO had not simultaneously executed the Investment Banking Agreement

41. ASCO's failure and refusal to pay fees to EAG with respect to the Extraordinary Transaction between ASCO and Blue Point unfairly enriches ASCO at the expense of EAG.

42. By reason of the foregoing, ASCO is indebted to EAG in an amount exceeding $400,000.00, together with interest thereon.

**WHEREFORE**, EAG respectfully requests that this Court grant judgment in its favor and against ASCO as follows:

A. on the First Claim for Relief, in the minimum amount of $100,000, and, upon information and belief, in an amount exceeding $400,000.00, together with interest thereon; or, in the alternative,

B. on the Second Claim for Relief, in an amount exceeding $400,000.00, together with interest thereon; and

C. granting such other and further relief in favor of EAG as this Court deems just and proper.

Dated: New York, New York
      May 24, 2007

      ROBINSON BROG LEINWAND GREENE
      GENOVESE & GLUCK, P.C.

By: *[signature]*
    David C. Burger (DB-8666)
1345 Avenue of the Americas
New York, New York 10105-0143
(212) 603-6300
**Attorneys for Plaintiff**