UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
THE EDWARD ANDREWS GROUP, INC.,

               Plaintiff,                   07 Civ. 4607 (AJP)

  -against-

ADDRESSING SERVICES COMPANY, INC.

               Defendant.

------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION *IN LIMINE*

Eric B. Fisher, Esq.
MORGENSTERN FISHER & BLUE, LLC
885 Third Avenue
New York, New York 10022
Telephone: (212) 750-6776
Direct Facsimile: (646) 349-2816
Email: efisher@mfbnyc.com

*Attorneys for Defendant*

## PRELIMINARY STATEMENT

Defendant Addressing Services Company ("ASCO") respectfully submits this memorandum of law in support of its motion *in limine* pursuant to Rules 402 and 403 of the Federal Rules of Evidence to preclude plaintiff The Edward Andrews Group ("EAG") from introducing any evidence at trial concerning "add backs," including but not limited to the designated deposition testimony of David Renouf, and EAG's proposed trial exhibits 21, 22, 23, 27, 28, 29, 30, 31 and 32 (collectively, the "Add Back Evidence").[1] ASCO also seeks to preclude evidence concerning services rendered by EAG to ASCO before the January 13, 2004 effective date of the Investment Banking Agreement (the "Precontractual Services Evidence").

As explained briefly below, the Investment Banking Agreement at the heart of EAG's case demonstrates that the Add Back Evidence and the Precontractual Services Evidence are not probative of any material issues in the case. Further, admission of this irrelevant evidence would be prejudicial to ASCO.

## ARGUMENT

## POINT I

## THE ADD BACK EVIDENCE IS IRRELEVANT AND PREJUDICIAL

A.  **Nature of the Case**

In this case, EAG claims that ASCO owes it a "success fee" under an investment banking agreement dated January 13, 2004 (the "Investment Banking Agreement"), as a result of a March 2007 transaction between ASCO and Blue Point Capital Partners (the "Blue Point Transaction"). In the alternative, EAG claims that it is entitled to recover on

---

[1]  Pursuant to the Court's pretrial instructions, copies of all of the proposed exhibits referenced herein are to be submitted to the Court by EAG's counsel.

1

a theory of unjust enrichment. In response, ASCO asserts, among other things, that EAG's claims for relief are barred by a release, and that EAG failed to perform its obligations under the Investment Banking Agreement and did not confer any benefit upon ASCO.

**B.   Add Back Evidence Defined**

The Add Back Evidence in dispute includes voluminous documents, and anticipated live and deposition testimony concerning the allegedly "excessive salaries and personal expenses charged by Rittlinger[2] and/or his family to ASCO which constituted 'add backs' for the purpose of the Blue Point transaction (and which constituted Consideration as that term is defined in the Investment Banking Agreement)." *See* EAG's description of witness testimony in the Joint Pretrial Order at Section D ¶¶ 2-3. The Add Back Evidence, for example, includes testimony and exhibits about the following topics:

- automobile expenses paid by ASCO on behalf of Michael Rittlinger and certain of Michael Rittlinger's family members;
- salaries paid to Michael Rittlinger's mother, father and sister;
- expenses that were unlikely to recur after Blue Point took over the business;
- payments to another company owned by Michael Rittlinger;
- cash payments to Michael Rittlinger; and
- loans to a friend of Michael Rittlinger.

(*See, e.g.*, Proposed Trial Exhibit 28 (containing documents produced by David M. Renouf, CPA); *see also* Proposed Trial Exhibits 30, 31 and 32 (ASCO's check registers for 2004, 2005 and 2006, which EAG plans to introduce into evidence for purposes of

---

2   Michael Rittlinger is the owner of ASCO.

2

pointing out personal expenses paid by ASCO)). All of the Add Back Evidence predates the closing of the Blue Point Transaction.

Counsel in this case refer to this information as "add backs" because, for purposes of evaluating ASCO's financial condition and arriving at a price for the Blue Point Transaction, the Blue Point private equity firm permitted ASCO to add these items back into ASCO's 2006 financials, thereby increasing the total 2006 EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization).[3] Conceptually, the idea was that these expenses would not recur after Blue Point took over the business, and, accordingly, adding them back into the financials created a more accurate picture of ASCO's business performance for purposes of the transaction.

### C. The Add Back Evidence Is Irrelevant And Prejudicial

The Add Back Evidence is presumably proffered by EAG with regard to the issue of damages. It is not relevant to that issue or to any other issue in the case. *See generally Linkco, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 191 (S.D.N.Y. 2002) (excluding evidence as irrelevant to issue of damages and highly prejudicial).

In the event that EAG proves ASCO's liability under the Investment Banking Agreement, then the jury will have to calculate the contractual "success fee" to which EAG is entitled under the Investment Banking Agreement. On that issue, the contract states in relevant part:

> As consideration for EAG's services hereunder, upon successful completion by the Company or any of the Shareholders of an Extraordinary Transaction with any party, the Company shall pay EAG a cash fee (the "Success Fee") equal to ***4% of the aggregate Consideration or value from such Extraordinary Transaction received by the Company or the Shareholders***...

---

[3] Although these items were only added back to the 2006 financial statements, Blue Point considered these types of expenses for 2004 and 2005 as well, in connection with its due diligence process.

3

> The term "Consideration" shall be deemed to include, but not limited to, (i) the amount of equity investment(s) in the Company, (ii) loans to the Company, (iii) proceeds received from the sale of assets of the Company; (iv) the assumption (whether through the sale of assets or securities) of all indebtedness (which includes capital leases), (v) proceeds received by the Shareholders of the Company from the sale of securities, (vi) distributions, dividends and bonuses of any kind to Shareholders after the date of this Agreement, but only to the extent that the aggregate of all such distributions, dividends, dividends [sic] and bonuses exceed $200,000 and (vii) stock, cash, debt instruments, or anything of value received by the Company or the Shareholders in any merger, consolidation or any Extraordinary Transaction.

*See* Proposed Trial Exhibit 1 (emphasis added). (A copy of the Investment Banking Agreement is attached as **Exhibit A** to the Fisher Declaration submitted herewith.)

The Add Back Evidence is irrelevant to the damages calculation because, simply stated, it is not part of the "aggregate Consideration or value from [the] Extraordinary Transaction." To the extent that the Add Back Evidence includes items of value received by Michael Rittlinger, all of that value was received from ASCO <u>before</u> the Blue Point Transaction. It was not value received <u>from</u> the transaction in any way, shape or form.

Moreover, the fact that Blue Point considered the issue of add backs as part of its due diligence and in reaching its price for the transaction does not render the Add Back Evidence relevant. The manner in which Blue Point conducted its due diligence or arrived at its price are not issues in this case. The only relevant issue is the aggregate consideration received by ASCO and Michael Rittlinger as a result of the transaction.

ASCO expects EAG to argue that the add backs are relevant to the calculation of the success fee because they are "distributions, dividends and bonuses of any kind to Shareholders after the date of this Agreement." *Id.* at subsection (vi). This strained

4

reading of an isolated clause in the Investment Banking Agreement makes nonsense of the entire agreement. Under EAG's reading, EAG's success fee includes 4% of all distributions to Michael Rittlinger over the three-year period from January 13, 2004 until the Blue Point Transaction closed in March 2007. As already explained above, any such distributions bear no relationship to the Blue Point Transaction or to any value derived from the Blue Point Transaction. Accordingly, EAG's reading of subsection (vi) negates the overarching definition of consideration contained in the preceding paragraph of the Investment Banking Agreement, which is **the value received from the transaction**. *See generally Mercury Partners, LLC v. Pacific Medical Buildings, L.P.*, 02 Civ. 6005 (HBP), 2007 U.S. Dist. LEXIS 55855, at *22 (S.D.N.Y. July 30, 2007) ("A contract must be interpreted as a whole, with regard to all of its provisions; provisions should not be selected and interpreted in isolation, without regard to other provisions of the contract which bear upon them.").

EAG's reading also makes no common sense and is inconsistent with the general purpose of the Investment Banking Agreement. The Investment Banking Agreement clearly ties the success fee to the completion of an "Extraordinary Transaction." It follows that the financial advisor's compensation should bear some relationship to that transaction. Yet, according to EAG, it is entitled to compensation based on value completely unrelated to that transaction. *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect"); *see also Williams Press v. State of New York*, 37 N.Y.2d 434, 440, 373 N.Y.S.2d 72, 77 (1975) (the "meaning of a writing may be distorted where undue force is given to single words

5

or phrases"); *Tougher Heating & Plumbing Co. v. State of New York*, 73 A.D.2d 732, 733, 423 N.Y.S.2d 289. 290-91 (3d Dept. 1979) ("It is a fundamental principle that the intention of the parties must be gleaned from all corners of the document...rather than from sentences or clauses viewed in isolation; and every part of the contract should be interpreted to give effect to its general purpose.").

Because EAG drafted the Investment Banking Agreement, using a form that EAG had developed in-house for such agreements, the doctrine of *contra proferentem* applies. *See, e.g.*, Proposed Trial Exhibit 16 (example of same form of agreement used by EAG in May 2002). Thus, to the extent that the definition of consideration is ambiguous, any ambiguities should be construed against EAG and in a manner that lends coherence to the Investment Banking Agreement as a whole.

Finally, under Rule 403, even if the Add Back Evidence were probative of a material issue, which it is not, it should nonetheless be excluded because it will cause unfair prejudice and confusion, undue delay, and it will mislead the jury. It is fairly obvious that EAG seeks to introduce this irrelevant evidence to highlight occasions when ASCO paid personal expenses of Michael Rittlinger, including for example home repairs, loans to friends, payments to family members, automobile expenses and other like expenses, and to insinuate (without competent evidence) that these payments did not receive proper tax treatment. In the pretrial order, EAG uses inflammatory, prejudicial language, referring to some of the add backs as "excessive salaries and personal expenses."

Notably, EAG did not designate David Renouf, ASCO's accountant at the time, as a live witness, choosing instead to selectively designate his deposition testimony. That

is because Mr. Renouf is in a position to dispel EAG's unsupported insinuation of improper tax treatment. Regardless, this is not a tax trial; nor is it a trial that even touches on the topic of corporate accounting.

The Add Back Evidence that EAG proposes to introduce at trial will cause unfair prejudice to ASCO because of the suggestion of improper tax treatment. Moreover, in the absence of competent evidence on the topic from a witness with the expertise to address the issues raised by the add backs, the evidence will tend to mislead the jury. Finally, the Add Back Evidence threatens to bog the trial down in complicated, and ultimately irrelevant, evidence that will require detailed accounting testimony.[4]

## POINT II

## THE PRECONTRACUAL SERVICES EVIDENCE IS IRRELEVANT

EAG seeks to introduce evidence of services "performed by EAG for ASCO <u>pre-dating</u> and post-dating the Investment Banking Agreement." *See, e.g.*, Joint Pretrial Order, proposed topics for testimony of Timothy Brog (emphasis added). Services performed <u>before</u> the effective date of the Investment Banking Agreement are irrelevant. The Investment Banking Agreement provides that the success fee is payment "[a]s consideration for EAG's services hereunder" – not for services rendered before the Investment Banking Agreement. Moreover, at his deposition, Timothy Brog, EAG's owner and sole employee, stated that he had been paid all fees that he was owed by ASCO during the period from May 2002 until January 2004 – the date of the Investment Banking Agreement – and that there were no further fees owed to him. *See* Brog

---

[4] In the event that the Add Back Evidence is permitted, ASCO reserves its right to call Mr. Renouf to address each of the issues raised by EAG. Currently, ASCO has designated Mr. Renouf as a witness only with regard to computing the consideration received in the Blue Point Transaction.

7

Deposition at 107:7-19. (An excerpt from the Brog deposition is attached as **Exhibit B** to the Fisher Declaration submitted herewith.) Thus, Mr. Brog conceded that EAG did not have any claim for amounts owed before the effective date of the Investment Banking Agreement.

Consistent with Mr. Brog's testimony, the complaint in this action seeks unjust enrichment damages to compensate EAG for ASCO's alleged "refusal to pay fees to EAG with respect to the Extraordinary Transaction." Complaint ¶ 51. (A copy of the Amended Complaint is attached as **Exhibit C** to the Fisher Declaration submitted herewith.) The complaint does not seek damages for some other amorphous benefit that EAG allegedly conferred on ASCO before the Investment Banking Agreement.

Accordingly, EAG has no claim to compensation for any period before January 2004, and services provided by EAG before the effective date of the Investment Banking Agreement are have no relevance to EAG's claims. *See generally Louissier v. Universal Music group, Inc.*, 02 Civ. 2447 (KMW), 2005 U.S. Dist. LEXIS 45431, at *5 (S.D.N.Y. Aug. 30, 2005) (excluding evidence because it was not relevant to elements of claim).

## **CONCLUSION**

For the reasons set forth above, ASCO respectfully requests that this Court preclude the Add Back Evidence and the Precontractual Services Evidence, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 6, 2008

MORGENSTERN FISHER & BLUE, LLC

By: /s/ Eric B. Fisher
Eric B. Fisher
885 Third Avenue
New York, New York 10022
Telephone: (212) 750-6776
Direct Facsimile: (646) 349-2816
efisher@mfbnyc.com

*Attorneys for Defendant*