1

COPY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

THE EDWARD ANDREWS GROUP, INC.,    :

                Plaintiff,    : 07 Civ. 4607

      -against-              : (LTS)(AJP)

ADDRESSING SERVICES COMPANY, INC., :

                Defendant.    :

------------------------------------x

            January 16, 2008

            10:18 a.m.


    Deposition of **TIMOTHY BROG,** taken by Defendant, pursuant to Order, held at the offices of Morgenstern Jacobs & Blue, LLC, 885 Third Avenue, New York, New York, before Amy A. Rivera, a Certified Shorthand Reporter and Notary Public within and for the State of New York.

```
                                                   105
1                      T. Brog
2    believe that's the name of the firm. I introduced
3    them and I referred -- they gave Michael
4    business.  Then I did it as a good-faith gesture,
5    and I was not expecting to be paid, but Michael
6    insisted.
7         Q.    So you were paid in connection with
8    the Hinton Hill referral?
9         A.    Not a lot, yes.
10        Q.    What were you paid?
11        A.    In the neighborhood of less than -- I
12   don't know the exact dollar amount, but less than
13   $10,000.  There was more owed, but I didn't -- I
14   didn't get paid and I didn't push it because I
15   really originally did it as a good-faith gesture.
16        Q.    Mr. Rittlinger insisted on paying you,
17   even though you told him that he didn't have to
18   pay you?
19        A.    I made the introduction.  Michael
20   wasn't getting the business, even though I
21   introduced Ken McGovern to his people over at
22   Hinton Hill, and Michael called me up and was
23   pushing me to intercede on his behalf.  I did so.
24              He ended up getting some business.  He
25   wanted more business.  My guess was if he thought
```

```
                                                    106
 1                    T. Brog
 2    if I was earning fees, I would be more
 3    incentivized to push Hinton Hill to give him more
 4    additional business.  So --
 5         Q.   You also said that he owed you more
 6    than what he paid you for Hinton Hill.  What's
 7    the basis for that statement?
 8         A.   When we -- when we -- when we -- when
 9    he was pushing me, he said, I'm going to pay you
10    4 percent of, I'm guessing -- I shouldn't guess.
11    Hold on.
12              He suggested that he pay me a
13    percentage of the business that I introduced to
14    him from Hinton Hill.  I said, Michael, that's
15    not necessary.  He says, no, because I wanted you
16    to be incentivized or -- he didn't say that.
17              I'm trying to -- it's hard.  I don't
18    remember the exact details of the conversation.
19    To say that wouldn't be accurate.  But I do
20    remember him sending me a list of business that
21    Hinton Hill did provide to Addressing Services
22    Company, and I did not get paid on the full
23    amount, but it was not worth it to me to do
24    anything about it or to say anything about it.
25         Q.   So that's not an issue you ever raised
```

```
                                                         107
 1                      T. Brog
 2   with Michael?
 3        A.    What issue are you referring to?
 4        Q.    Being owed money on Hinton Hill?
 5        A.    I did not ask Michael to pay me the
 6   remaining money, if that's what you're asking.
 7        Q.    Aside from money that Michael paid to
 8   you in connection with Hinton Hill during the
 9   period from May 2002 until January 2004, did
10   Michael Rittlinger or Addressing Services
11   Company, Inc. make any other payments to you?
12        A.    I don't think so, but I don't
13   remember.  If there were any, it was de minimis.
14        Q.    And during that same period of time,
15   were there any fees that were owed to you or to
16   the Edward Andrews Group?
17        A.    Other than what we just discussed?
18        Q.    Yes.
19        A.    Not that I'm aware of.
20        MR. BURGER:  I'll just note that it's
21   1 o'clock.  Can we go off the record?
22        MR. FISHER:  Sure.
23        (Discussion off the record.)
24        (Luncheon recess.)
25
```