# EXHIBIT A

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

THE EDWARD ANDREWS GROUP INC.,

Plaintiff

V.

ADDRESSING SERVICES COMPANY, INC.,

Defendant

**ECF CASE**

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**JUDGE SWAIN**

**04 CV 6731**

TO: (Name and address of defendant)

Addressing Services Company
88 Long Hill Street
East Hartford, Connecticut 06108

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

an answer to the complaint which is herewith served upon you, within_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

A TRUE COPY
ATTEST
(PROCESS SERVER
CHRISTINE)

**J. MICHAEL McMAHON**

AUG 1 9 2004

CLERK

DATE

_Melanie L. Lopez_

(BY) DEPUTY CLERK

EXHIBIT
_V_

A00367

AO 440 (Rev. 10/93) Summons in a Civil Action -SDNY WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐   Served personally upon the defendant. Place where served: _____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐   Returned unexecuted: _____

☐   Other *(specify)*: _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
              Date                                          Signature of Server

_____
Address of Server

(1)     As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

A00368

David C. Burger (DB-8666)
ROBINSON BROG LEINWAND GREENE
            GENOVESE & GLUCK P.C.
Attorneys for Plaintiff
1345 Avenue of the Americas
New York, New York 10105-0143
(212) 603-6300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE EDWARD ANDREWS GROUP INC.,

          Plaintiff,

    - against -

ADDRESSING SERVICES COMPANY, INC.,

          Defendant.

---

No. 04 Civ. 6731

COMPLAINT

      Plaintiff, The Edward Andrews Group Inc. ("EAG"), by its attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., as and for its complaint, alleges as follows:

### THE PARTIES

      1.    Plaintiff EAG is a New York corporation with its principal place of business located at 370 Lexington Avenue, New York, New York 10017.

      2.    Upon information and belief, Defendant Addressing Services Company, Inc. ("ASCO") is a Connecticut corporation with its principal place of business located at 88 Long Hill Street, East Hartford, Connecticut 06108.

A00369

## JURISDICTION AND VENUE

3.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) in that the parties to this action are citizens of different states and the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2).

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

5.      ASCO is engaged in the business of direct mailing.

6.      EAG introduced ASCO to Jeffrey Klein ("Klein") and a business opportunity ("Business Opportunity") to, inter alia, expand its operations to include first party collection and mailing services with Klein managing the expansion.

7.      Prior to such introduction, EAG entered into a Non-Circumvention Agreement with Klein which prohibited Klein from entering into an agreement with any party introduced to Klein by EAG without either including EAG in the business venture or compensating EAG for its efforts.

8.      EAG introduced Klein to ASCO and the Business Opportunity and rendered services to Klein and ASCO in good faith based on, inter alia, the Non-Circumvention Agreement and an oral understanding and agreement that EAG would participate in the Business Opportunity.

9.      After EAG introduced ASCO to the Business Opportunity, ASCO and Klein secretly met and conspired to breach the Non-Circumvention Agreement and exclude EAG from the Business Opportunity.

10.     EAG learned of such meeting and demanded that it participate in the Business Opportunity or be compensated for the introduction and its efforts.

A00370

11.    ASCO requested that EAG (i) waive its rights under the Non-Circumvention Agreement, (ii) waive its rights to participate in the Business Opportunity, (iii) release Klein and ASCO from any liabilities, and (iv) act as an advisor to ASCO on the Business Opportunity and other matters.

12.    In consideration of (i) ASCO being introduced to the Business Opportunity, (i) EAG waiving its rights under the Non-Circumvention Agreement, (ii) EAG waiving its rights to participate in the Business Opportunity, (iii) EAG releasing Klein and ASCO from any liabilities, and (iv) EAG acting as an advisor to ASCO on the Business Opportunity and other matters, EAG and ASCO agreed, among other things, that ASCO would pay EAG $8,300.00 per month for a period of sixty (60) months for a total of $498,000.00.

13.    This agreement (the "Consulting Agreement") was memorialized in writing and executed by EAG and ASCO. A copy of the Consulting Agreement is attached hereto as Exhibit A.

14.    EAG has fulfilled all of its obligations under the Consulting Agreement.

15.    Pursuant to the Consulting Agreement, the first installment payment of $8,300.00 became due and payable upon the execution of the Consulting Agreement. All subsequent installment payments were to be paid on the first day of each successive month following the execution of the Consulting Agreement.

16.    ASCO paid to EAG the first three installment payments of $8,300.00 for a total of $24,900.00.

17.    ASCO failed to pay to EAG the June 2004 installment payment.

18.    Section 6 of the Consulting Agreement states:

Failure to Pay. If [ASCO] fails to make payment for a particular month, [EAG] shall provide written notice of such failure. In the

A00371

event that payment is not made within 10 days after such notice
to [ASCO], all remaining payments shall automatically be
accelerated and become due and payable and not be subject to
Section 3 above.

19.    EAG telephoned ASCO on June 2, 2004 and informed ASCO that it had

not received the June 2004 installment payment and EAG was told it would be sent immediately.

20.    EAG still did not receive the June 2004 installment payment and EAG

again attempted to communicate with ASCO concerning ASCO's failure to make the June 2004

installment payment, and EAG left telephone messages for ASCO in that regard, but ASCO has

failed and refused to respond.

21.    On or about June 8, 2004, EAG provided to ASCO written notice of

ASCO's failure to make the June 2004 installment payment ("Default Notice"). The Default

Notice was sent to ASCO via Federal Express.

22.    ASCO failed to make the June 2004 installment payment within ten (10)

days after receipt of the Default Notice.

23.    Pursuant to the Consulting Agreement, as of June 19, 2004, all the

remaining installment payments were automatically accelerated and became due and payable.

24.    On June 24, 2004, EAG sent ASCO a Demand Letter requesting the

payment of $473,100 owed pursuant to the Consulting Agreement.

25.    To date, neither the June 2004 installment payment nor any part of

ASCO's accelerated debt to EAG has ever been paid, and ASCO has failed to communicate with

EAG concerning the Default Notice.

### FOR A FIRST CLAIM
#### (Breach of Contract)

26.    EAG incorporates the allegations of paragraphs 1 through 25 above.

{00235724.DOC;1}                                    4

A00372

27.    EAG and ASCO entered into the Consulting Agreement.

28.    EAG fulfilled all of its obligations under the Consulting Agreement.

29.    ASCO breached the Consulting Agreement by failing to pay monies owed to EAG by ASCO pursuant to the terms of the Consulting Agreement.

30.    By reason of the foregoing, ASCO is indebted to EAG in the amount of $473,100.00, together with interest thereon.

### FOR A SECOND CLAIM
(Attorney's Fees And Costs)

31.    EAG incorporates the allegations of paragraphs 1 through 25 and 27 through 30 above.

32.    Section 10 of the Consulting Agreement states:

Litigation.  If any litigation is commenced as a result of this Agreement, the party most prevailing shall be entitled to, in addition to any and all other remedies at law, an award of its attorney's fees and expenses incurred in connection with such litigation.

33.    By reason of the foregoing, ASCO is indebted to EAG in the total sum of EAG's attorney's fees and costs incurred in relation to the herein action.

A00373

## FOR A THIRD CLAIM
### (*QUANTUM MERUIT*)

34.    EAG incorporates the allegations of paragraphs 1 through 25, 27 through 30 and 32 through 33 above.

35.    EAG introduced ASCO to Klein and the Business Opportunity and rendered services to ASCO with the expectation of being compensated.

36.    The reasonable value of EAG's introduction of Klein and the Business Opportunity to ASCO, the reasonable value of the resolution of EAG's disputed right to participate in the Business Opportunity, and the reasonable value of the services rendered by EAG is not less than $498,000.00.

37.    To date, ASCO has only paid EAG $24,900.00 for the business opportunity introduction and the services rendered by EAG.

38.    By reason of the foregoing, ASCO is indebted to EAG in *quantum meruit* in the amount not less than $473,100.00, together with interest thereon.

## FOR A FOURTH CLAIM
### (Unjust Enrichment)

39.    EAG incorporates the allegations of paragraphs 1 through 25, 27 through 30, 32 through 33 and 35 through 38 above.

40.    EAG introduced ASCO to Klein and the Business Opportunity and rendered services to ASCO.

41.    ASCO has been unjustly enriched by these actions taken by EAG for ASCO's benefit.

42.    By reason of the foregoing, ASCO is indebted to EAG in the amount of $473,100.00, together with interest thereon.

A00374

WHEREFORE, EAG respectfully requests that this Court grant judgment in its favor and against ASCO as follows:

      A.     on the First Claim, in the amount of $473,100.00, together with interest thereon;

      B.     on the Second Claim, in the amount of the attorney's fees and costs incurred by EAG relating to the herein action;

      C.     on the Third and Fourth Claims, in an amount not less than $473,100.00, together with interest thereon; and

      D.     granting such other and further relief in favor of EAG as this Court deems just and proper.

Dated: New York, New York
       August 18, 2004

                  ROBINSON BROG LEINWAND GREENE
                  GENOVESE & GLUCK, P.C.

            By:
                  David C. Burger (DB-8666)
                  1345 Avenue of the Americas
                  New York, New York 10105-0143
                  (212) 603-6300
                  **Attorneys for Plaintiff**

{00235724.DOC;1}              7

Exhibit A

A00376

## CONSULTING AGREEMENT

This Agreement made this 13th day of January, 2004, by and between The Edward Andrews Group Inc., a New York corporation organized and existing under the laws of the State of New York with a principal place of business at 370 Lexington Avenue, New York, New York 10017, "Consultant," and Addressing Services Company, Inc., a Connecticut corporation organized and existing under the Laws of the State of Connecticut, with a principal place of business at 88 Long Hill Street, East Hartford, Connecticut 06108 ("ASCO"), and together with any of its parent entity, subsidiary, or entities directly or indirectly affiliated with any of the foregoing or Michael Rittlinger or a member of Michael Rittlinger's family (collectively, "Client").

WHEREAS, Consultant introduced to Client a potential opportunity (the "Business Opportunity") to expand its current business into first party collection and mailing services, including certain individuals to implement such expansion; and Consultant was to be a principal in such activities, and now is willing to forego same; and

WHEREAS, Client has consulted with the Consultant on various matters pertaining to expanding the operation of its business as it relates to first party collection, and statement processing, all related to the mail industry; and

WHEREAS, Client desires to compensate Consultant for its valuable and beneficial services provided to Client up to the date hereof, over a five (5) year period for services already provided and completed and to resolve the dispute over Consultant's rights to participate in the Business Opportunity.

NOW THEREFOR, in consideration of the mutual covenants and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1.    Compensation.  Client shall pay Consultant $8,300.00 per month for a period of sixty (60) months subject to paragraph 3 hereof.  The first payment shall be due and payable upon the execution of this Agreement and the remaining fifty nine (59) payments shall be paid by Client on the first day of each successive month following the execution of this Agreement.  Neither an invoice nor request by Consultant to Client is required to receive the above described payments.

2.    Term.  This Agreement shall terminate upon the 60th installment payment, or pursuant to the terms herein.

3.    Suspension of this Agreement.  If, during the term of this Agreement, neither Jeffrey Klein nor any member of Jeffrey Klein's family (collectively, the "Klein Group") is

(68013-001.DOC/1)

A00377

directly or indirectly affiliated with Client and does not receive or accrue any form of compensation or consideration from Client during a period of ninety (90) days, thereafter the installment payments and the calculation of the term set forth above shall be suspended. Payments hereunder shall immediately resume in the event that the Klein Group begins to receive or accrue compensation or consideration of any kind or is again directly or indirectly affiliated with Client and shall be paid in successive months thereafter until Consultant is paid in full.

If the Klein Group receives any compensation or consideration upon terminating its relationship with Client that is in excess of money owed for worked previously performed, Consultant shall continue to receive its monthly installment for a period of 12 months after such termination.

4.    Notices.    All notices, requests and other communications to any Party hereunder shall be in writing and shall be given by registered or certified mail (postage prepaid, return receipt requested), or by nationally recognized overnight delivery service, or personally delivered to the address provided below:

If to Consultant:                      The Edward Andrews Group Inc.
                                       370 Lexington Avenue, 19th Floor
                                       New York, New York 10017
                                       Attention: Timothy Brog
                                       Telephone: (212) 557-6150
                                       Facsimile: (212) 557-6140

If to Client:                          Addressing Services Company, Inc.
                                       88 Long Hill Street
                                       East Hartford, Connecticut 06108
                                       Attention: Mr. Michael Rittlinger
                                       Telephone: (860) 290-6655
                                       Facsimile:  (860) 282-2077

Unless otherwise specified herein, such notices or other communications shall be deemed received (a) on the date delivered, if delivered personally, (b) one (1) Business Day after being sent by Federal Express or other overnight courier of national reputation for next day delivery, and (c) five (5) Business Days after being sent, if sent by registered or certified mail. Any of the Parties hereto shall be entitled to specify a different address by giving notice as aforesaid to each of the other Parties hereto. Notice to in-house or outside counsel of any Party hereto shall not constitute notice to such Party.

5.    Binding Effect.    This Agreement shall be binding upon and inure to the benefit of the parties hereto, and to their respective heirs, successor and assigns.    This Agreement may not be assigned.  However, at its sole discretion, Consultant may direct Client to make payment to another entity or individual.

6.    Failure to Pay.    If Client fails to make a payment for a particular month, Consultant shall provide written notice of such failure.  In the event that payment is not made

{00215466.DOC:1}2

within 10 days after such notice to Client, all remaining payments shall automatically be accelerated and become due and payable and not be subject to Section 3 above.

7.    **Amendment.**  No amendments, modifications or additions to this Agreement shall be binding unless in writing and executed by the parties hereto.  Solely with respect to the introduction of the Business Opportunity and the Klein Group to Client, this Agreement shall be deemed to express and embody and supercede all other previous understandings, agreements, commitments, either written or oral, between the parties hereto and to fully and finally set forth the entire agreement between the parties.

8.    **Severability.**  The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.

9.    **Governing Law.**  This Agreement and the legal relations among the parties hereto shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of law doctrine and the parties hereto agree to the exclusive jurisdiction of the federal and state courts in New York County, New York.

10.    **Litigation.**  If any litigation is commenced as a result of this Agreement, the party most prevailing shall be entitled to, in addition to any and all other remedies at law, an award of its attorney's fees and expenses incurred in connection with such litigation.

11.    **Release.**  Simultaneously with the execution of this Agreement, the parties hereto and Jeffrey Klein shall execute Releases in the form attached hereto as Exhibit A.

12.    **Confidentiality.**  The parties hereto agree that they shall keep confidential and not disclose to other persons the terms of this Agreement, except that they may make such disclosures of this Agreement and the terms hereof (i) as shall be required by applicable law or (ii) to their officers, directors, agents and employees and their professional advisors. Notwithstanding the foregoing, Client consents to Consultant's disclosure that Consultant was responsible for the introduction of the Business Opportunity and the Klein Group to Client for promotional or marketing purposes.

13.    **Sale of ASCO.**  All payments remaining pursuant to this Agreement shall be accelerated and become immediately due and payable upon the sale of ASCO, substantially all of its assets or a controlling interest in ASCO.

**IN WITNESS HEREOF,** the parties hereto intend to be legally bound, have hereunto executed this Agreement the date and year first written above and signed.

ADDRESSING SERVICES COMPANY, INC.

By _____

Michael L. Rittinger, President

{00215468.DOC;1}3

A00379

THE EDWARD ANDREWS GROUP, INC.

By _____
Timothy E. Brog, President

** TOTAL PAGE.16 **

A00380

# EXHIBIT B

Su*in,5,

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

THE EDWARD ANDREWS GROUP INC.,          :

                 Plaintiff,          :          04 Civ. 6731 (LTS)

      -against-          :          **FINAL JUDGMENT**

ADDRESSING SERVICES COMPANY, INC.,      :

             Defendant.          :
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/20/05

#

       This matter having come before the Court on plaintiff's motion for

summary judgment as to its first and second claims for relief, and on defendant's cross-

motion for leave to amend its answer, and the Court having issued its Opinion and Order,

dated November 29, 2005, granting defendant's cross-motion, granting summary

judgment in favor of plaintiff on its first and second claims for relief, directing the

dismissal of plaintiff's third and fourth claims for relief that were plead in the alternative,

and directing plaintiff to file a statement of the attorneys' fees and expenses sought

pursuant to the second claim for relief, and plaintiff having filed a statement of damages,

and defendant having filed no opposition to plaintiff's statement of damages, and the

Court having considered all papers filed and proceedings had herein and otherwise being

fully informed in the premises and good cause appearing therefore,

       **IT IS ORDERED, ADJUDGED AND DECREED** that the plaintiff The

Edward Andrews Group, Inc. recover of the defendant Addressing Services Company,

Inc. the total sum of $495,786.25, plus interest as provided by law from the date of this

Final Judgment, comprised of $473,100.00 on plaintiff's first claim for relief, and

Copies~~mailed~~ faxed to Counsel of Record
Chambers of Judge Swain    12/20/05

{00291904.DOC;1}

$19,925.50 in attorneys' fees and $2,760.75 in expenses on plaintiff's second claim for relief; and

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that plaintiff's third and fourth claims for relief are dismissed with prejudice.

The Clerk of the Court is directed to enter this Final Judgment forthwith.

Dated at New York, New York, this _20th_ day of December, 2005.

**LAURA TAYLOR SWAIN**
**United States District Judge**

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____

{00291904.DOC;1}

# EXHIBIT C



PLAINTIFF'S
EXHIBIT
TRIAL 36

1

65Q7ANDC
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

EDWARD ANDREWS GROUP, INC.,

        Plaintiff,

        v.                  04 Civ. 6731

ADDRESSING SERVICES COMPANY, INC.,

        Defendant.

------------------------------x

                         May 26, 2006
                         11:30 a.m.

Before:

              HON. ANDREW J. PECK,

                        Magistrate Judge

                APPEARANCES

ROBINSON BROG
        Attorney for Plaintiff
BY:  DAVID C. BURGER

LITMAN ASCHE & GIOIELLA LLP
        Attorney for Defendant
BY:  RICHARD M. ASCHE

ALSO PRESENT:  TIMOTHY BROG
              CHARLES ALFANO, JR., ESQ. (via telephone)
              MICHAEL RITTLINGER (via telephone)

              SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

2

65Q7ANDC
        (In the robing room)
        THE COURT:  Mr. Rittlinger, are you still there?
        MR. RITTLINGER:  I'm here.
        THE COURT:  We are on the record in the case of Edward
Andrews Group, Incorporated versus Addressing Services Company,
Incorporated, 04 Civ. 6731, to record the post-judgment

```
 7    settlement agreement that the parties have just reached.
 8          I am going to ask counsel who are present and counsel
 9    on the phone, as well as clients present and on the phone, to
10    pay careful attention as I state the agreement, and I will ask
11    all of you at the end to affirm that that is indeed the
12    agreement.
13          Present in the courtroom, for the record, is Mr.
14    Burger, counsel of record for the plaintiff, and Mr. Timothy
15    Brog, a managing director of the plaintiff.
16          Also in the courtroom is Mr. Asche, counsel of record
17    for the defendant.  Present on the phone is Mr. Charles Alfano,
18    Jr., general corporate counsel for defendant Addressing
19    Services Company; and Mr. Michael Rittlinger on the phone, who
20    is a principal or the principal of the defendant.
21          The parties have agreed to have defendant pay the
22    outstanding judgment in the following fashion:
23          All payments to be made by certified check, to be
24    delivered to Mr. Burger at the Robinson Brog firm on or before
25    the due date.
```

3

```
      65Q7ANDC
 1          The first payment in the sum of $100,000 will be
 2    delivered on or before June 2, 2006.  The second payment in the
 3    sum of $50,000 is due 50 days from today.  The third payment,
 4    the sum of $224,000 is due 100 days from today.  And the final
 5    payment of $25,000 is due 150 days from today.
 6          The total of all four payments being $399,000.
 7          All four payments are personally guaranteed by
 8    Mr. Rittlinger as well as being the obligation of the defendant
 9    Addressing Services Company, Incorporated.
10          In the event that all four payments totaling $399,000
11    are made by or on behalf of Addressing Services Company without
12    the need to utilize Mr. Rittlinger's guarantee or for plaintiff
13    to take any other collection efforts, then the judgment
14    previously entered on or about December 20, 2005, in the sum of
15    $495,786.25, then the judgment in full will be extinguished and
16    a satisfaction of judgment will be filed by the plaintiff.
17          In the event that the total $399,000 is not paid or is
18    only paid after utilization of the personal guarantee and other
19    collection efforts, then the judgment remains due, subject to
20    credit for any payment made, and the judgment and interest and
21    all other provisions of the judgment and of judgment
22    enforcement will remain.
23          In addition, Mr. Rittlinger agrees that as part of his
24    personal guarantee of the $399,000 he will not transfer any
25    personal assets other than in the normal course of his personal
```

4

```
      65Q7ANDC
 1    life, meaning obviously you can pay your regular credit card
 2    bills, mortgage, eat, all those good things, but not, for
 3    example, transferring major assets to a family member, friend
```

4  or anything outside of what would be normal course of your
5  life.
6            In addition, the court's subpoena that was enforced by
7  Judge Swain and myself will be considered outstanding but held
8  in abeyance until the $399,000 is paid, at which point the
9  subpoena will be deemed extinguished.
10           In addition, obviously the plaintiff agrees, as long
11 as all payments under this payment plan are being made as
12 scheduled, to refrain from any other efforts to enforce the
13 judgment, but the judgment remains outstanding until the
14 $399,000 is paid pursuant to this schedule as previously
15 described by the court.
16           I believe that states all the terms that the parties
17 have agreed to.
18           Mr. Burger and Mr. Asche, is there anything I have
19 forgotten or gotten wrong?
20           MR. ASCHE:  Your Honor, just as a matter of mechanics,
21 would it be OK with Mr. Burger if in exchange for the final
22 $25,000 certified check he gives me a satisfaction of judgment
23 that I can file?
24           THE COURT:  You can do that simultaneously by some
25 form of informal escrow or meet in the middle between your two
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                            5
   65Q7ANDC
1  offices, shake hands and exchange the certified check for the
2  satisfaction.
3            MR. ASCHE:  And in terms of transferring assets, I
4  take it that your Honor has in mind that Mr. Rittlinger would
5  not do anything that would operate as a fraud on this judgment.
6            THE COURT:  Correct.
7            MR. ASCHE:  If he transfers assets for consideration,
8  that would not violate the settlement.
9            THE COURT:  As long as the consideration remains
10 available.  You know, if he sells his house at the market rate
11 for a million bucks, and that's the market rate for the house,
12 and the million dollars goes into a bank account and doesn't
13 get dissipated, you know, that's fine.  If he sells a million
14 dollar house for $200,000, that's a problem.  You understand
15 that, right?
16           MR. ASCHE:  Yes, I could do.
17           MR. BROG:  Will we receive notice if there is a sale
18 of the house or sale of anything?
19           THE COURT:  Sale of any major asset, even for value,
20 should be on notice to the plaintiff through counsel.
21           All right.  Mr. Burger, as counsel of record for the
22 plaintiff, and subject to your client's assent that I will ask
23 for in a moment, do you agree to the terms of the settlement.
24           MR. BURGER:  Yes, I do.
25           THE COURT:  Mr. Brog, please raise your right hand.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                            6
   65Q7ANDC

```
 1    Do you solemnly swear that the answers you are about to give to
 2    my question or questions will be true and correct, so help you
 3    God?
 4               MR. BROG:  So help me God.
 5               THE COURT:  You are a managing director of Edward
 6    Andrews Group, Incorporated?
 7               MR. BROG:  Yes I am.
 8               THE COURT:  You are authorized to enter into this
 9    settlement?
10               MR. BROG:  Yes, I am.
11               THE COURT:  Have you gotten the advice of your
12    attorney, Mr. Burger, in connection with this?
13               MR. BROG:  Yes, I have.
14               THE COURT:  And having heard the terms of the
15    settlement post-judgment, post-judgment settlement as I have
16    described it on the record, do you on behalf of Edward Andrews
17    Group agree to the terms as described?
18               MR. BROG:  Yes.
19               THE COURT:  All right.  We're going to do the same
20    drill on the defendant's side.
21               Mr. Asche, as counsel of record for defendant
22    Addressing Services Company, and subject to the assent of
23    corporate counsel and the client, do you agree to the terms of
24    the settlement?
25               MR. ASCHE:  Yes, your Honor.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

                                                                        7

```
      65Q7ANDC
 1               THE COURT:  All right.  Mr. Alfano, as corporate
 2    general counsel for Addressing Services Company, do you agree
 3    to the terms of the settlement as I have read them?
 4               MR. ALFALO:  Yes, your Honor.
 5               THE COURT:  Mr. Rittlinger, please raise your right
 6    hand.  To you affirm that you have raised your right hand?
 7               MR. RITTLINGER:  Yes.
 8               THE COURT:  Do you solemnly swear that the answers you
 9    will give to my questions will be true, complete and correct,
10    so help you God?
11               MR. RITTLINGER:  Yes.
12               THE COURT:  All right.  Mr. Rittlinger, you are a
13    principal or the principal of Addressing Services Company?
14               MR. RITTLINGER:  I am.
15               THE COURT:  And are you authorized to enter into this
16    settlement agreement on behalf of Addressing Service?
17               MR. RITTLINGER:  Yes.
18               THE COURT:  And you have gotten the advice of your
19    general counsel, Mr. Alfano, and your litigation counsel, Mr.
20    Asche, correct?
21               MR. RITTLINGER:  Correct.
22               THE COURT:  And you understand the terms of the
23    post-judgment settlement that I have described?
24               MR. RITTLINGER:  I have, yeah.
25               THE COURT:  And do you understand that in addition to
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

8

65Q7ANDC

1  the obligation you are entering into on behalf of the company,
2  you are also entering into a personal guarantee of the
3  $399,000?  Correct?
4        MR. RITTLINGER:  Correct.
5        THE COURT:  And you have agreed to that.
6        MR. RITTLINGER:  I have.
7        THE COURT:  All right.  And on behalf of yourself
8  personally and Addressing Services Company, incorporated,
9  having heard the terms of the settlement, including that of the
10  personal guarantee, and having gotten the advice of your
11  attorneys Mr. Alfano and Mr. Asche, do you agree to the terms
12  of the settlement?
13        MR. RITTLINGER:  I do.
14        THE COURT:  All right.  All parties having agreed to
15  the terms of the post-judgment settlement, you now have a
16  binding settlement agreement.  The court is entering it on this
17  transcript as a so-ordered court order, in addition to its
18  private contractual nature.
19        I will direct counsel on both sides, Mr. Asche and Mr.
20  Burger, to make arrangements with the court reporter to get the
21  transcript and get it filed with the clerk of the court.  I
22  will instruct the clerk of the court administratively to close
23  this action.
24        The judgment, of course, remains outstanding unless
25  and until satisfied.  And if there is any further matters in
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

9

65Q7ANDC

1  connection with post-judgment discovery -- and hopefully not --
2  and anything having to do with failure under the settlement
3  agreement, you know where to find the court.  All right.
4  Anything further from anybody?
5        MR. ASCHE:  Thank you, your Honor for your assistance.
6        MR. BURGER:  Thank you.
7        MR. BROG:  Thank you.
8        THE COURT:  We are adjourned.  Thank you all.
9                        * * *
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24