# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
THE EDWARD ANDREWS GROUP INC., :

     Plaintiff, :  07 Civ. 4607 (LTS)

   -against- :  **AMENDED
            COMPLAINT**

ADDRESSING SERVICES COMPANY, INC., :

     Defendant. :
-------------------------------------------------------X

   Plaintiff, The Edward Andrews Group Inc. ("EAG"), by its attorneys, Robinson

Brog Leinwand Greene Genovese & Gluck P.C., as and for its amended complaint, alleges as

follows:

## THE PARTIES

   1. Plaintiff EAG is a New York corporation with its principal place of business

located at 708 Third Avenue, New York, New York 10017.

   2. Upon information and belief, Defendant Addressing Services Company, Inc.

("ASCO" or the "Company") is a Connecticut corporation with its principal place of business

located at 225 Episcopal Road, Berlin, Connecticut 06037.

## JURISDICTION AND VENUE

   3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) in

that the parties to this action are citizens of different states and the matter in controversy,

exclusive of interest and costs, exceeds the sum or value of $75,000.

   4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2).

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

   5. ASCO is engaged in the business of direct mailing.



**EXHIBIT**

BB

ALL-STATE LEGAL®

6.  On or about January 13, 2004, the parties executed two written agreements: (a) a consulting agreement, dated January 13, 2004 ("Consulting Agreement"); and (b) an exclusive financial advisor agreement, dated January 13, 2004 ("Investment Banking Agreement"). Copies of the Consulting Agreement and the Investment Banking Agreement are attached hereto as Exhibits A and B, respectively.

7.  Paragraph 3 of the Investment Banking Agreement states, inter alia, that: "The parties entered into this [Investment Banking Agreement] as part of a settlement ["Settlement"] and simultaneously with the Consulting Agreement, between [ASCO] and EAG, dated January 13, 2004."

8.  As described in part in the "whereas" clauses of the Consulting Agreement, the Settlement resolved a dispute over a potential business opportunity that EAG introduced to ASCO, including EAG's rights to participate in that business opportunity.

9.  The claims resolved in the Settlement related to services performed by EAG for the benefit of ASCO.

10. As stated in the third "whereas" clause of the Consulting Agreement, the Consulting Agreement, in part, compensated EAG for services provided by EAG for the benefit of ASCO over a period of five years.

11. The claims resolved in the Settlement constituted consideration for both the Consulting Agreement and the Investment Banking Agreement. In addition, the execution of the Consulting Agreement and the Investment Banking Agreement each constituted consideration for the other.

12. The Consulting Agreement and the Investment Banking Agreement were both signed by Michael Rittlinger ("Rittlinger") as an officer and the sole shareholder of ASCO.

2

13. In prior litigation concerning the Consulting Agreement, summary judgment was entered in favor of EAG with respect to monies owed by ASCO to EAG. After the entry of a final judgment against ASCO in the amount of $495,786.25, the prior litigation was settled. See The Edward Andrews Group Inc. v. Addressing Services Company, Inc., 04 Civ. 6731 (LTS) (S.D.N.Y.) (the "Prior Litigation").

14. Pursuant to the Investment Banking Agreement, EAG was retained as, <u>inter alia</u>, the "exclusive financial advisor in connection with all Extraordinary Transactions involving the Company [<u>i.e.</u> ASCO]."

15. The Investment Banking Agreement provides for the payment of a cash fee by ASCO to EAG, as follows:

> "As consideration for EAG's services hereunder, upon successful completion by the Company or any of the Shareholders of an Extraordinary Transaction with any party, <u>the Company shall pay EAG a cash fee (the 'Success Fee') equal to 4% of the aggregate Consideration or value from such Extraordinary Transaction received by the Company or the Shareholders. Notwithstanding the above formula, the Success Fee shall be a minimum of $100,000.</u> The Success Fee shall be due and payable in cash at the closing of the transaction and a condition precedent to closing." (emphasis added)

Investment Banking Agreement, at p. 1, ¶ 2.

16. The Investment Banking Agreement defines the term "Extraordinary Transaction" as follows:

> "The term 'Extraordinary Transaction' shall be deemed to include, but not limited to, the sale of the Company or any of its assets, an initial public offering, or any transaction entered into by the Company or the Shareholders out of the ordinary course of its business."

Investment Banking Agreement, at p. 2, ¶ 2.

17. The Investment Banking Agreement defines the term "Consideration" as

follows:

> "The term 'Consideration' shall be deemed to include, but
> not limited to, (i) the amount of equity investment(s) in
> the Company, (ii) loans to the Company, (iii) proceeds
> received from the sale of the assets of the Company, (iv)
> the assumption (whether through the sale of assets or
> securities) of all indebtedness (which includes capital
> leases), (v) proceeds received by the Shareholders of the
> Company from the sale of securities, (vi) distributions,
> dividends and bonuses of any kind to Shareholders after
> the date of this Agreement, but only to the extent that the
> aggregate of all such distributions, dividends, dividends
> [sic] and bonuses exceed $200,000 and (vii) stock, cash,
> debt instruments, or anything of value received by the
> Company or the Shareholders in any merger,
> consolidation or any Extraordinary Transaction."

Investment Banking Agreement, at p. 2, ¶ 2.

18. EAG performed services pursuant to the Investment Banking Agreement for

the benefit of ASCO.

19. In October, 2005, it came to EAG's attention that ASCO might be exploring

the potential sale of its business.

20. By a letter from EAG to ASCO, dated October 10, 2005 ("October 10, 2005

Letter"), EAG provided notice to ASCO, inter alia that:

> "Notwithstanding the fact that we are in a dispute over
> our Consulting Agreement, dated January 13, 2004, EAG
> is ready, willing and able to (i) provide financial and
> strategic advice and (ii) introduce the Company to
> potential acquirors and/or strategic or financial partners, if
> in fact you are considering an Extraordinary Transaction
> (as defined in the Investment Banking Agreement). I
> hope you choose to utilize EAG's expertise and contacts.
> Please be aware, however, that even if you choose not to
> let EAG assist ASCO, pursuant to our Investment
> Banking Agreement, ASCO and Michael Rittlinger will
> still be obligated to pay EAG a Success Fee (as defined

therein) if ASCO consummates an Extraordinary
Transaction."

October 11, 2005 Letter, copy attached hereto as Exhibit C.

21. ASCO did not reply to the October 10, 2005 Letter.

22. By a letter from EAG to ASCO, dated November 3, 2005 ("November 3, 2005
Letter"), EAG, inter alia, reiterated that it was ready, willing and able to provide services
pursuant to the Investment Banking Agreement, and that a Success Fee would be due to EAG
with respect to any Extraordinary Transaction whether or not ASCO chose to utilize EAG's
services. A copy of the November 3, 2005 Letter is attached hereto as Exhibit D.

23. ASCO did not reply to the November 3, 2005 Letter.

24. The Investment Banking Agreement has a term ranging from twenty-four
months to forty-eight months (with possible further extension) after the termination of any
relationship between ASCO and Jeffrey Klein ("Klein"), as follows:

> "EAG shall be the Company's exclusive financial advisor
> from the date hereof until 24 months following the
> termination of any relationship between the Company and
> Jeffrey Klein (the 'Period'). A Success Fee, as described
> in Section 2 hereof, shall be paid to EAG if there is an
> Extraordinary Transaction involving the Company  (a)
> during the Period (which shall be extended if discussions
> are in progress at that time) or  (b) during the twenty four
> months following the Period (which shall be extended if
> active negotiations are in progress at that time), if EAG,
> the Company or any Shareholder had any contact with
> such entity during the Period."

Investment Banking Agreement, at p. 3, ¶ 6.

25. Rittlinger was deposed on April 15, 2005 in the Prior Litigation. Rittlinger
testified, inter alia, that Klein was continuing to perform services for ASCO as of April 15, 2005,

and that it was anticipated that Klein would continue to perform services for ASCO until September, 2005.

26. Klein was deposed as a non-party witness on April 25, 2005 in the Prior Litigation. Klein testified, inter alia, that he and Rittlinger had reached a mutual understanding and agreement that he would continue to provide consulting services to ASCO through August 2005, and that his duties and responsibilities would continue unchanged through August 2005.

27. On or about March 16, 2007, a press release was issued by Blue Point Capital Partners ("Blue Point") stating, inter alia, that Blue Point "has recapitalized [ASCO]" and describing the transaction as Blue Point's "acquisition of ASCO."

28. The transaction between ASCO and Blue Point that occurred on or about March 16, 2007 was an Extraordinary Transaction, as that term is defined in the Investment Banking Agreement.

29. The initial twenty-four month Period under the Investment Banking Agreement extended to at least April 15, 2007, based on Rittlinger's deposition testimony that Klein was performing services for ASCO as of April 15, 2005.

30. Since negotiation between ASCO and Blue Point occurred during the initial twenty-four month Period of the Investment Banking Agreement, the term of the Investment Banking Agreement was extended for an additional twenty-four month period, through at least April 15, 2009. See Investment Banking Agreement, at p. 3, ¶ 6(b).

31. The transaction between ASCO and Blue Point that occurred on or about March 16, 2007, was within the initial Period of the Investment Banking Agreement, and within the twenty-four month extension of that Period, pursuant to the provisions of the Investment Banking Agreement.

32. Beginning in or about March, 2007, EAG requested that ASCO provide it with documentation identifying the nature and terms of the transaction between ASCO and Blue Point, but ASCO has failed and refused to provide any such documentation.

33. EAG has demanded that ASCO comply with its obligations under the Investment Banking Agreement to pay EAG a fee based on the transaction between ASCO and Blue Point, but ASCO has failed and refused to pay any fee to EAG.

34. Upon information and belief, the transaction between ASCO and Blue Point involved Consideration (as that term is defined in the Investment Banking Agreement) in excess of $10 million.

## FOR A FIRST CLAIM FOR RELIEF
### (Breach of Contract)

35. EAG incorporates the allegations of paragraphs 1 through 34 above.

36. EAG entered into the Consulting Agreement as part of the Settlement and thereby relinquished other rights and claims based, at least in part, on services previously performed for the benefit of ASCO and on ASCO's simultaneous execution of the Investment Banking Agreement including, but not limited to, the provisions thereof which require ASCO to pay a Success Fee to EAG.

37. Pursuant to the terms of the Investment Banking Agreement, EAG was ASCO's exclusive financial advisor in connection with all Extraordinary Transactions involving ASCO.

38. EAG has performed services pursuant to the Investment Banking Agreement for the benefit of ASCO. EAG has performed, and/or has proffered its performance of, all of its obligations under the Investment Banking Agreement.

39. Starting in October, 2005, when it came to EAG's attention that ASCO might be exploring the potential sale of its business, EAG gave repeated written notice to ASCO that EAG was ready, willing and able to provide services under the Investment Banking Agreement, and that the Success Fee defined in the Investment Banking Agreement would be owed by ASCO to EAG if an Extraordinary Transaction involving ASCO was completed, regardless of whether or not ASCO utilized EAG's proffered services.

40. Starting in or about October 2005, ASCO did not choose to utilize the services proffered by EAG, even though ASCO had accepted the benefit of EAG's services pursuant to the Investment Banking Agreement prior to that time.

41. ASCO never responded to, nor challenged, EAG's repeated notices that ASCO would owe EAG a Success Fee under the Investment Banking Agreement for any completed Extraordinary Transaction regardless of whether or not ASCO continued to utilize the services proffered by EAG.

42. EAG would never have entered into the Settlement and the Consulting Agreement and would never have relinquished other rights and claims if ASCO had not simultaneously executed the Investment Banking Agreement.

43. ASCO breached the Investment Banking Agreement by failing to pay monies owed to EAG by ASCO pursuant to the terms of the Investment Banking Agreement.

44. By reason of the foregoing, ASCO is indebted to EAG in the minimum amount of $100,000.00, and, upon information and belief, in an amount exceeding $400,000.00, together with interest thereon.

8

**FOR A SECOND CLAIM FOR RELIEF**
**(Unjust Enrichment)**

45. EAG incorporates the allegations of paragraphs 1 through 34 and 36 through 44 above.

46. ASCO's answer ("Answer") to EAG's original complaint in this action asserted a defense, at ¶ 49, that: "The Investment Banking Agreement is not an enforceable agreement."

47. EAG's Answer does not explain any reason why the Investment Banking Agreement is allegedly unenforceable.

48. EAG alleges that the Investment Banking Agreement is fully enforceable. However, in the event that the Investment Banking Agreement is found to be unenforceable, in part or in whole, EAG seeks a judgment, in the alternative, for unjust enrichment.

49. EAG provided advice to ASCO and educated ASCO with respect to many issues (the "Advice") including, but not limited to, the following:

(a)     Names of potential strategic and financial buyers;

(b)     Financing sources and their expectation of leverage limitations for a company in the direct marketing business;

(c)     Structuring of transactions;

(d)     Selling assets versus selling stock;

(e)     Designing earn out provisions;

(f)     Multiples that one could expect depending on the form of consideration;

(g)     Establishing joint ventures;

(h)     Disadvantages of a reverse merger into a public shell;

(i)     Timing of transactions to minimize tax leakage;

9

(j)    Terms of a confidentiality agreement;

(k)    Terms of a non-competition agreement;

(l)    Appropriate standard for material terms in an acquisition agreement;

(m)    Negotiation of a letter of intent;

(n)    Pro forma financial statements to create an adjusted EBITDA number;

(o)    Due diligence issues;

(p)    No shop provisions;

(q)    Customary representations and warranties; and

(r)    Indemnification issues.

50.  The Advice provided by EAG to ASCO was of actual benefit to ASCO, as reflected in the terms of the transaction between ASCO and Blue Point.

51.  ASCO's failure and refusal to pay fees to EAG with respect to the Extraordinary Transaction between ASCO and Blue Point unfairly enriches ASCO at the expense of EAG.

52. By reason of the foregoing, ASCO is indebted to EAG in an amount exceeding $400,000.00, together with interest thereon.

**WHEREFORE**, EAG respectfully requests that this Court grant judgment in its favor and against ASCO as follows:

10

A.    on the First Claim for Relief, in the minimum amount of $100,000, and,

upon information and belief, in an amount exceeding $400,000.00, together with interest thereon;

or, in the alternative,

B.    on the Second Claim for Relief, in an amount exceeding $400,000.00,

together with interest thereon; and

C.    granting such other and further relief in favor of EAG as this Court deems

just and proper.

Dated: New York, New York
      October 19, 2007

                              **ROBINSON BROG LEINWAND GREENE
                                    GENOVESE & GLUCK, P.C.**

                            **By:**

                                  **David C. Burger (DB-8666)
                            1345 Avenue of the Americas
                            New York, New York 10105-0143
                            (212) 603-6300
                            Attorneys for Plaintiff**

JAN 13 '04 13:53 FR ASCO INC          860 290 8561 TO 912125528140          P.13/18

## CONSULTING AGREEMENT

This Agreement made this 13 day of January, 2004, by and between The Edward Andrews Group Inc., a New York corporation organized and existing under the laws of the State of New York with a principal place of business at 370 Lexington Avenue, New York, New York 10017, ("Consultant") and Addressing Services Company, Inc., a Connecticut corporation organized and existing under the Laws of the State of Connecticut, with a principal place of business at 88 Long Hill Street, East Hartford, Connecticut 06108 ("ASCO"), and together with any of its parent entity, subsidiary, or entities directly or indirectly affiliated with any of the foregoing or Michael Rittinger or a member of Michael Rittinger's family (collectively, "Client").

WHEREAS, Consultant introduced to Client a potential opportunity (the "Business Opportunity") to expand its current business into first party collection and mailing services, including certain individuals to implement such expansion; and Consultant was to be a principal in such activities, and now is willing to forego same; and

WHEREAS, Client has consulted with the Consultant on various matters pertaining to expanding the operation of its business as it relates to first party collection, and statement processing, all related to the mail industry; and

WHEREAS, Client desires to compensate Consultant for its valuable and beneficial services provided to Client up to the date hereof, over a five (5) year period for services already provided and completed and to resolve the dispute over Consultant's rights to participate in the Business Opportunity.

NOW THEREFOR, in consideration of the mutual covenants and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1.     **Compensation.** Client shall pay Consultant $8,300.00 per month for a period of sixty (60) months, subject to paragraph 3 hereof. The first payment shall be due and payable upon the execution of this Agreement and the remaining fifty nine (59) payments shall be paid by Client on the first day of each successive month following the execution of this Agreement. Neither an invoice nor request by Consultant to Client is required to receive the above described payments.

2.     **Term.** This Agreement shall terminate upon the 60th installment payment, or pursuant to the terms herein.

3.     **Suspension of this Agreement.** If, during the term of this Agreement, neither Jeffrey Klein nor any member of Jeffrey Klein's family (collectively, the "Klein Group") is

{00213466.DOC;1}

JAN 13 '04 13:53 FR ASCO INC          860 290 6661 TO 912125576148          P.14/18

directly or indirectly affiliated with Client and does not receive or accrue any form of compensation or consideration from Client during a period of ninety (90) days, thereafter the installment payments and the calculation of the term set forth above shall be suspended. Payments hereunder shall immediately resume in the event that the Klein Group begins to receive or accrue compensation or consideration of any kind or is again directly or indirectly affiliated with Client and shall be paid in successive months thereafter until Consultant is paid in full.

If the Klein Group receives any compensation or consideration upon terminating its relationship with Client that is in excess of money owed for worked previously performed, Consultant shall continue to receive its monthly installment for a period of 12 months after such termination.

4.    Notices.    All notices, requests and other communications to any Party hereunder shall be in writing and shall be given by registered or certified mail (postage prepaid, return receipt requested), or by nationally recognized overnight delivery service, or personally delivered to the address provided below:

If to Consultant:          The Edward Andrews Group Inc.
                           370 Lexington Avenue, 19th Floor
                           New York, New York 10017
                           Attention: Timothy Brog
                           Telephone: (212) 557-6150
                           Facsimile: (212) 557-6140

If to Client:              Addressing Services Company, Inc.
                           88 Long Hill Street
                           East Hartford, Connecticut 06108
                           Attention: Mr. Michael Rittlinger
                           Telephone: (860) 290-6655
                           Facsimile: (860) 282-2077

Unless otherwise specified herein, such notices or other communications shall be deemed received (a) on the date delivered, if delivered personally, (b) one (1) Business Day after being sent by Federal Express or other overnight courier of national reputation for next day delivery, and (c) five (5) Business Days after being sent, if sent by registered or certified mail. Any of the Parties hereto shall be entitled to specify a different address by giving notice as aforesaid to each of the other Parties hereto. Notice to its house or outside counsel of any Party hereto shall not constitute notice to such Party.

5.    Binding Effect.    This Agreement shall be binding upon and inure to the benefit of the parties hereto, and to their respective heirs, successor and assigns. This Agreement may not be assigned. However, at its sole discretion, Consultant may direct Client to make payment to another entity or individual.

6.    Failure to Pay.    If Client fails to make a payment for a particular month, Consultant shall provide written notice of such failure. In the event that payment is not made

{00213466.DOC;1}2

within 10 days after such notice to Client, all remaining payments shall automatically be accelerated and become due and payable and not be subject to Section 3 above.

7.    **Amendment.**  No amendments, modifications or additions to this Agreement shall be binding unless in writing and executed by the parties hereto.  Solely with respect to the introduction of the Business Opportunity and the Klein Group to Client, this Agreement shall be deemed to express and embody and supercede all other previous understandings, agreements, commitments, either written or oral, between the parties hereto and to fully and finally set forth the entire agreement between the parties.

8.    **Severability.**  The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.

9.    **Governing Law.**  This Agreement and the legal relations among the parties hereto shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of law doctrine and the parties hereto agree to the exclusive jurisdiction of the federal and state courts in New York County, New York.

10.    **Litigation.**  If any litigation is commenced as a result of this Agreement, the party most prevailing shall be entitled to, in addition to any and all other remedies at law, an award of its attorney's fees and expenses incurred in connection with such litigation.

11.    **Release.**  Simultaneously with the execution of this Agreement, the parties hereto and Jeffrey Klein shall execute Releases in the form attached hereto as Exhibit A.

12.    **Confidentiality.**  The parties hereto agree that they shall keep confidential and not disclose to other persons the terms of this Agreement, except that they may make such disclosures of this Agreement and the terms hereof (i) as shall be required by applicable law or (ii) to their officers, directors, agents and employees and their professional advisors.  Notwithstanding the foregoing, Client consents to Consultant's disclosure that Consultant was responsible for the introduction of the Business Opportunity and the Klein Group to Client for promotional or marketing purposes.

13.    **Sale of ASCO.**  All payments remaining pursuant to this Agreement shall be accelerated and become immediately due and payable upon the sale of ASCO, substantially all of its assets or a controlling interest in ASCO.

    IN WITNESS HEREOF, the parties hereto intend to be legally bound, have hereunto executed this Agreement the date and year first written above and signed.

                                        ADDRESSING SERVICES COMPANY, INC.

                                        By _____
                                            Michael L. Rittlinger, President

                                {04213466.DOC;1}3

JAN 13 '04 13:55 FR ASCO INC     960 290 6651 TO 912125878140     P.16/16

THE EDWARD ANDREWS GROUP, INC.

By
Timothy E. Brog, President

{00213466.DOC;}4

** TOTAL PAGE.16 **

JAN 13 '04 13:45 FR WECO INC          860 290 6661 TO 912125576140      P.01/15

# EDWARD ANDREWS GROUP

January 13, 2004

Bv E-Mail
Mr. Michael L. Rittlinger
Addressing Services Company, Inc
88 Long Hill Street
East Hartford, CT 06108-1458

Michael:

This will confirm the understanding and agreement (the "Agreement") by and among The Edward Andrews Group Inc. ("EAG"), Addressing Services Company, Inc. and its affiliated companies (collectively, the "Company") and Michael Rittlinger (the "Shareholder"), with respect to EAG (i) providing financial and strategic advice and (ii) introducing the Company to potential acquirors and/or strategic or financial partners (collectively, the "Assignment").

1.    Retention of The Edward Andrews Group Inc.

The Company and the Shareholder hereby engages EAG, and EAG accepts such engagement, as the Company and the Shareholder's exclusive financial advisor in connection with all Extraordinary Transactions involving the Company, including activities and transactions related to the Assignment.

2.    Success Fee

As consideration for EAG's services hereunder, upon successful completion by the Company or any of the Shareholders of an Extraordinary Transaction with any party, the Company shall pay EAG a cash fee (the "Success Fee") equal to 4% of the aggregate Consideration or value from such Extraordinary Transaction received by the Company or the Shareholders  Notwithstanding the above formula, the Success Fee shall be a minimum of $100,000. The Success Fee shall be due and payable in cash at the closing of the transaction and a condition precedent to closing.

In the event the Company enters into a strategic relationship or a transaction that is not specifically contemplated hereunder, the parties hereto agree to negotiate in good faith an appropriate compensation arrangement for EAG similar to the one described above.

JAN 13 '04 13:46 FR ASCO INC        860 290 9661 TO 912125575140        P.02/15

Mr Michael L Rittlinger
Addressing Services Company. Inc.
January 13, 2004
Page 2

The term "Consideration" shall be deemed to include, but not limited to, (i) the amount of equity investment(s) in the Company, (ii) loans to the Company, (iii) proceeds received from the sale of assets of the Company, (iv) the assumption (whether through the sale of assets or securities) of all indebtedness (which includes capital leases), (v) proceeds received by the Shareholders of the Company from the sale of securities, (vi) distributions, dividends and bonuses of any kind to Shareholders after the date of this Agreement, but only to the extent that the aggregate of all such distributions, dividends, dividends and bonuses exceed $200,000 and (vii) stock, cash, debt instruments, or anything of value received by the Company or the Shareholders in any merger, consolidation or any Extraordinary Transaction.

The term "Extraordinary Transaction" shall be deemed to include, but not limited to, the sale of the Company or any of its assets, an initial public offering, or any transaction entered into by the Company or the Shareholders out of the ordinary course of its business.

3.    Retainer Fee

Upon the execution of this Engagement Letter there shall not be any retainer fee. The parties entered into this Engagement Letter as part of a settlement and simultaneously with the Consulting Agreement, between the Company and EAG, dated January 15, 2004

4.    Indemnification

The Company and each Shareholder agrees to indemnify and hold EAG, its officers, directors, employees, affiliates, control persons or agents harmless from and against all losses, claims, damages, liabilities, costs or expenses, including reasonable attorney fees, arising out of the performance of this Agreement, whether or not EAG is a party to such dispute

The provisions of this Section shall survive the termination and expiration of this Agreement.

5    Representation and Warranty

The Company, each Shareholder and EAG hereby represents that it has taken all necessary and appropriate actions to enter into this Agreement and has authorized the appropriate officer to execute the same. The Company and the Shareholder represents that the sole shareholder of the Company is Michael Rittlinger.

JAN 13 '04 13:47 FR ASCO INC          868 290 6661 TO 912125575140     P.03/16

Mr. Michael L. Rittlinger
Addressing Services Company, Inc.
January 2, 2004
Page 3

6.     Term

EAG shall be the Company's exclusive financial advisor from the date hereof until 24
months following the termination of any relationship between the Company and Jeffrey
Klein (the "Period").     A Success Fee, as described in Section 2 hereof, shall be paid to
EAG if there is an Extraordinary Transaction involving the Company (a) during the
Period (which shall be extended if discussions are in progress at that time) or (b) during
the twenty four months following the Period (which shall be extended if active
negotiations are in progress at that time), if EAG, the Company or any Shareholder had
any contact with such entity during the Period

7     Expenses

Although EAG shall have no obligation to incur expenses of any kind in connection with
the performance of this Agreement, EAG shall be responsible for all of its expenses,
other than costs incurred by EAG that are associated with non-local travel, including,
among other things, airfare, train, hotel and auto rental (collectively, "Travel Costs").
Travel Costs will either be prepaid by the Company or promptly reimbursed by the
Company

8     Miscellaneous

This Agreement and the legal relations among the parties hereto shall be governed by and
construed in accordance with the laws of the State of New York, without regard to its
conflicts of law doctrine and the parties hereto agree to the exclusive jurisdiction of the
courts in New York County, New York

JAN 13 '04 13:47 FR ASCO INC          858 298 6661 TO 913125975148     P.04/16

Mr. Michael L. Rittlinger
Addressing Services Company, Inc.
January 2, 2004
Page 4

        Please confirm that the foregoing is in accordance with our understanding by signing and
returning to EAG the enclosed copy of this Engagement Letter.

                                Very truly yours,

                                THE EDWARD ANDREWS GROUP INC.


                                By:  _____
                                     Timothy Brog
                                     Managing Director

Accepted and Agreed to this
     day of January, 2004

ADDRESSING SERVICES COMPANY, INC.


By:  _____
     Name:
     Title:


MICHAEL L. RITTLINGER


_____

# EDWARD ANDREWS GROUP

October 10, 2005

By Federal Express and Email
Mr. Michael L. Rittlinger
Addressing Services Company, Inc.
88 Long Hill Street
East Hartford, CT 06108-1458

Michael:

It has just come to my attention that you may be exploring the potential sale of Addressing Services Company, Inc. ("ASCO"). As you are well aware, The Edward Andrews Group Inc. ("EAG") and ASCO entered into an agreement dated January 13, 2004 ("Investment Banking Agreement") in which EAG is to act as your "exclusive financial advisor in connection with all Extraordinary Transactions...."

Notwithstanding the fact that we are in a dispute over our Consulting Agreement, dated January 13, 2004, EAG is ready, willing and able to (i) provide financial and strategic advice and (ii) introduce the Company to potential acquirors and/or strategic or financial partners, if in fact you are considering an Extraordinary Transaction (as defined in the Investment Banking Agreement). I hope you choose to utilize EAG's expertise and contacts. Please be aware, however, that even if you choose not to let us assist ASCO, pursuant to our Investment Banking Agreement, ASCO and Michael Rittlinger will still be obligated to pay EAG a Success Fee (as defined therein) if ASCO consummates an Extraordinary Transaction.

Very truly yours,

Timothy Brog

# EDWARD ANDREWS GROUP

November 3, 2005

<u>By Federal Express and Email</u>
Mr. Michael L. Rittlinger
Addressing Services Company, Inc.
88 Long Hill Street
East Hartford, CT  06108-1458

Michael:

I am disappointed that you failed to respond to my letter dated October 10, 2005. I understand that we have an outstanding dispute relating to the Consulting Agreement. However, you know that there is no other person who has my level of knowledge and contacts in the Direct Marketing industry. In addition, as you well know, I am a deal maker as opposed to a deal breaker and I have the skills to consummate the sale of ASCO (if that is what you are doing) at the highest price for you.

Notwithstanding the dispute, I am a professional and I still consider you a friend, and as such I would work diligently and aggressively on behalf of you and ASCO to consummate the sale of ASCO. Even if you have started the process, I would highly recommend that you use my services. By using me there would be no additional cost to you, because my fee is going to be owed whether you use me or not.

As you are well aware, The Edward Andrews Group Inc. ("EAG") and ASCO entered into an agreement dated January 13, 2004 ("Investment Banking Agreement") in which EAG is to act as your "exclusive financial advisor in connection with all Extraordinary Transactions...."

I still remain ready, willing and able to (i) provide financial and strategic advice and (ii) introduce the Company to potential acquirors and/or strategic or financial partners, if in fact you are considering an Extraordinary Transaction (as defined in the Investment Banking Agreement). I hope you choose to utilize EAG's expertise and contacts. Please be aware, however, that even if you choose not to let us assist ASCO, pursuant to our Investment Banking Agreement, ASCO and Michael Rittlinger will still be obligated to pay EAG a Success Fee (as defined therein) if ASCO consummates an Extraordinary Transaction.

Very truly yours,

Timothy Brog

# EXHIBIT E

## RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

### THE EDWARD ANDREWS GROUP INC.

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of **TEN DOLLARS,**                                    ($10.00)

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and agreed, received from

**Jeffrey Klein & Addressing Services Company, Inc., ("ASCO")**

collectively as RELEASEES,

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments,extents, executions, claims, and demands whatsoever, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the ___ day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof,* the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be affixed hereto on _____, 2004.

### EDWARD ANDREWS GROUP, INC.

By: _____

Timothy Brog, President

STATE OF NEW YORK          )
                                          :
COUNTY OF NEW YORK      )

On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____

Notary Public



EAG0086

# RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

## THE EDWARD ANDREWS GROUP INC.

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of **TEN DOLLARS,**                                                         ($10.00)

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and agreed, received from

**Jeffrey Klein, David Klein, Steve Welti and Jeff Berk & Addressing Services Company, Inc., ("ASCO")** collectively as RELEASEES,

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the 13th day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof,* the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be affixed hereto on _____, 2001.

**EDWARD ANDREWS GROUP, INC.**

By: _____
                  Timothy Brog, President

STATE OF NEW YORK        )
                                               :
COUNTY OF NEW YORK    )

On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

{00213704.DOC:1}

EAG0087

# RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

## THE EDWARD ANDREWS GROUP INC.

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of **TEN DOLLARS,**

($10.00)

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and agreed, received from

### Jeffrey Klein & Addressing Services Company, Inc., ("ASCO")

collectively as RELEASEES,

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments,extents, executions, claims, and demands whatsoever, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the ___ day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof,* the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be affixed hereto on _____, 2004.

### EDWARD ANDREWS GROUP, INC.

By: _____
Timothy Brog, President

STATE OF NEW YORK      )
                                         :
COUNTY OF NEW YORK    )

     On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

{00213704.DOC;1}


EXHIBIT

EAG0174

# RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

## THE EDWARD ANDREWS GROUP INC.

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of **TEN DOLLARS,**
                                                                ($10.00)

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and agreed, received from

**Jeffrey Klein, David Klein, Steve Welti and Jeff Berk & Addressing Services Company, Inc., ("ASCO") collectively as RELEASEES,**

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the 13th day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof,* the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be affixed hereto on _____, 2001.

### EDWARD ANDREWS GROUP, INC.

By: _____

Timothy Brog, President

STATE OF NEW YORK    )
                     :
COUNTY OF NEW YORK   )

On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public



EAG0199

## RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

### THE EDWARD ANDREWS GROUP INC.

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of **TEN DOLLARS,**

($10.00)

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and agreed, received from

### Jeffrey Klein & Addressing Services Company, Inc., ("ASCO")

collectively as RELEASEES,

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments,extents, executions, claims, and demands whatsoever, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the ___ day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof,* the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be affixed hereto on _____, 2004.

### EDWARD ANDREWS GROUP, INC.

By: _____

Timothy Brog, President

STATE OF NEW YORK      )
                                           :
COUNTY OF NEW YORK    )

On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

## RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

### THE EDWARD ANDREWS GROUP INC.

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the
sum of **TEN DOLLARS**,                               ($10.00)

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and
agreed, received from

**Jeffrey Klein & Addressing Services Company, Inc., ("ASCO")**

collectively as RELEASEES,

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues,
sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements,
promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever,
arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business
opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family
members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a
Consulting Agreement made as of the ___ day of January, 2004, between ASCO and The EDWARD
ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this
RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof,* the RELEASOR has caused this RELEASE to be executed by its duly
authorized officers and its corporate seal to be affixed hereto on _____, 2004.

### EDWARD ANDREWS GROUP, INC.

By: _____

Timothy Brog, President

STATE OF NEW YORK          )
                                                         :
COUNTY OF NEW YORK      )

On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally
known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is
subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that
by his signature on the instrument, the individual, or the person upon behalf of which the individual acted,
executed the instrument.

_____

Notary Public

EXHIBIT

EAG0218

# RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

## THE EDWARD ANDREWS GROUP INC.

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of **TEN DOLLARS**,                                                                  **($10.00)**

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and agreed, received from

**Jeffrey Klein, David Klein, Steve Welti and Jeff Berk & Addressing Services Company, Inc., ("ASCO") collectively as RELEASEES,**

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the 13th day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof,* the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be affixed hereto on _____, 2004.

### EDWARD ANDREWS GROUP, INC.

By: _____
        Timothy Brog, President

STATE OF NEW YORK          )
                                                  :
COUNTY OF NEW YORK       )

On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public



EAG0236

# RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

## THE EDWARD ANDREWS GROUP INC.

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of **TEN DOLLARS,**
($10.00)

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and agreed, received from

**Jeffrey Klein & Addressing Services Company, Inc., ("ASCO")** collectively as RELEASEES,

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments,extents, executions, claims, and demands whatsoever, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the ____ day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof,* the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be affixed hereto on _____, 2004.

**EDWARD ANDREWS GROUP, INC.**

By: _____
<br>Timothy Brog, President

STATE OF NEW YORK    )
<br>                             :
<br>COUNTY OF NEW YORK    )

On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
<br>Notary Public

{00213704.DOC;1}

### RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

**THE EDWARD ANDREWS GROUP INC.**

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of **TEN DOLLARS,**                                                   ($10.00)

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and agreed, received from

**Jeffrey Klein & Addressing Services Company, Inc., ("ASCO")**

collectively as RELEASEES,

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments,extents, executions, claims, and demands whatsoever, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the ___ day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof,* the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be affixed hereto on _____, 2004.

**EDWARD ANDREWS GROUP, INC.**

By: _____

Timothy Brog, President

STATE OF NEW YORK          )
                                                  :
COUNTY OF NEW YORK      )

On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public



EAG0402

## RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

### THE EDWARD ANDREWS GROUP INC.

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of TEN DOLLARS,                                        ($10.00)

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and agreed, received from

**Jeffrey Klein, David Klein, Steve Welti and Jeff Berk & Addressing Services Company, Inc., ("ASCO") collectively as RELEASEES,**

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the 13th day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof,* the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be affixed hereto on _____, 2004.

### EDWARD ANDREWS GROUP, INC.

By: _____
                    Timothy Brog, President

STATE OF NEW YORK          )
                                                :
COUNTY OF NEW YORK       )

On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

{00213704.DOC;1}

**A00138
CONFIDENTIAL**

## RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

### THE EDWARD ANDREWS GROUP INC.

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of **TEN DOLLARS,**                                    ($10.00)

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and agreed, received from

**Jeffrey Klein & Addressing Services Company, Inc., ("ASCO")**

collectively as RELEASEES,

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the ___ day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

*In Witness Whereof,* the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be affixed hereto on _____, 2004.

**EDWARD ANDREWS GROUP, INC.**

By: _____
                Timothy Brog, President

STATE OF NEW YORK        )
                                                    :
COUNTY OF NEW YORK      )

On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

{00213704.DOC;1}

A00141
CONFIDENTIAL

# RELEASE

*To all to whom these Presents shall come or may Concern, Know That*

## THE EDWARD ANDREWS GROUP INC.

A corporation organized under the laws of the State of New York, as RELEASOR, in consideration of the sum of **TEN DOLLARS**,                              ($10.00)

and other good and valuable consideration, the sufficiency and receipt of which is acknowledge and agreed, received from

**Jeffrey Klein & Addressing Services Company, Inc., ("ASCO")**

collectively as RELEASEES,

releases and discharges

the RELEASEE, RELEASEE'S, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the ___ day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

      The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

      This RELEASE may not be changed orally.

      *In Witness Whereof*, the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be affixed hereto on _____, 2004.

                **EDWARD ANDREWS GROUP, INC.**

                By: _____
                         Timothy Brog, President

STATE OF NEW YORK      )
                          :
COUNTY OF NEW YORK    )

      On _____, 2004, before me, the undersigned, personally appeared Timothy Brog personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                    _____
                    Notary Public

A00143
CONFIDENTIAL

## RELEASE

**TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT TIMOTHY BROG,** as RELEASOR, in consideration of the sum of TEN DOLLARS ($10.00), and all other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, received from Jeffrey Klein, David Klein, Steve Welti and Jeff Berk, collectively referred to as "RELEASEE," releases and discharges RELEASEE, RELEASEE'S heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, arising out of and/or concerning the introduction by RELEASOR of Jeffrey Klein and ASCO, and the business opportunity and/or business relationship that ensued between Jeffrey Klein, and/or his agents and family members, and ASCO, except that this release does not release any claims, causes of action, etc. arising out of a Consulting Agreement made as of the 13th day of January, 2004, between ASCO and The EDWARD ANDREWS GROUP INC.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

**In Witness Whereof,** the RELEASOR has hereunto set RELEASOR'S hand and seal on the            day of            , 2004.

**In presence of**

_____

Timothy Brog


STATE OF            COUNTY OF            ss.:

On            , 2004, before me personally came Timothy Brog, to me known, and known to me to be the individual described in, and who executed, the foregoing RELEASE, and duly acknowledged to me that he executed the same.

_____

Notary Public

{00213704.DOC;1}

A00145
CONFIDENTIAL