UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE EDWARD ANDREWS GROUP INC.,              :

                               Plaintiff,              :          07 Civ. 4607 (AJP)

                -against-                              :

ADDRESSING SERVICES COMPANY, INC.,          :

                               Defendant.           :
------------------------------------------------------------X

## AFFIDAVIT OF TIMOTHY E. BROG

STATE OF NEW YORK    )
                           ) ss.:
COUNTY OF NEW YORK  )

        **TIMOTHY E. BROG**, being duly sworn, deposes and says:

        1.    I am the President of Plaintiff The Edward Andrews Group Inc. ("EAG"), and I submit this affidavit in opposition to the motion in limine ("Motion") filed by Defendant Addressing Services Company, Inc. ("ASCO").

        2.    It is undisputed that EAG and ASCO entered into a written investment banking agreement, dated January 13, 2004 ("Investment Banking Agreement"). The Investment Banking Agreement provides for the payment of a fee to EAG in the event of an "Extraordinary Transaction" involving ASCO. The amount of the fee is "4% of the aggregate Consideration or value from such Extraordinary Transaction received by [ASCO] or the Shareholders." Investment Banking Agreement, at ¶ 2 (a copy of the Investment Banking Agreement is attached as Exhibit A to the declaration of Eric B. Fisher, dated March 6, 2008 ("Fisher Decl."), submitted by ASCO in support of its Motion).

3. The Investment Banking Agreement defines "Consideration" as follows:

> "The term 'Consideration' shall be deemed to include, but not limited to, (i) the amount of equity investment(s) in [ASCO], (ii) loans to [ASCO], (iii) proceeds received from the sale of assets of [ASCO], (iv) the assumption (whether through the sale of assets or securities) of all indebtedness (which includes capital leases), (v) proceeds received by the Shareholders of [ASCO] from the sale of securities, (vi) distributions, dividends and bonuses of any kind to Shareholders after the date of this Agreement, but only to the extent that the aggregate of all such distributions, dividends, dividends [sic] and bonuses exceed $200,000 and (vii) stock, cash, debt instruments, or anything of value received by [ASCO] or the Shareholders in any merger, consolidation or any Extraordinary Transaction."

Investment Banking Agreement, at ¶ 2. The Investment Banking Agreement defines "Shareholder" as Michael Rittlinger ("Rittlinger"). Id., at first unnumbered paragraph.

4. ASCO's Motion is attempting to rewrite the Investment Banking Agreement to excise one element of "Consideration" as that term is expressly defined in the Investment Banking Agreement. ASCO is attempting to excise subparagraph 2(vi), relating to distributions, dividends and bonuses of any kind received by Rittlinger after January 13, 2004, to the extent that they aggregate more than $200,000.

5. Subparagraph 2(vi) is a necessary and critical term of the Investment Banking Agreement. Without that provision, ASCO could evade its obligation to pay a fee to EAG. Rittlinger could, as actually happened, take substantial distributions, dividends and bonuses from ASCO which would reduce the cash and/or other assets of ASCO. ASCO's value in an Extraordinary Transaction would then be reduced based on the diminished cash and/or asset position.

6. I agreed to a 4% fee in the Investment Banking Agreement based on the full value of ASCO. If Rittlinger chose to receive distributions of any kind from ASCO at any

time after January 13, 2004, EAG and ASCO agreed in the Investment Banking Agreement that the amount of those distributions would be considered "Consideration" for the purposes of calculating the fee due to EAG based on any Extraordinary Transaction.

7. Rittlinger's own testimony and the testimony of Rittlinger's accountant will establish that:

- Rittlinger took more than $1 million out of ASCO between January 13, 2004 and the date of the Extraordinary Transaction between ASCO and Blue Point Capital Partners ("Blue Point") in March 2007 ("Blue Point Transaction"); and

- Rittlinger represented to Blue Point that the more than $1 million taken out of ASCO should be considered "Add-Backs" for the purpose of determining ASCO's future profitability since the amounts taken by Rittlinger were not for any business purpose of ASCO and therefore would not recur in the future operations of ASCO.

8. By taking more than $1 million out of ASCO after the date of the Investment Banking Agreement, Rittlinger reduced the cash and/or other assets of ASCO by a commensurate amount as of the date of the Blue Point Transaction. The Investment Banking Agreement plainly provides that EAG's fee is to be calculated based on Consideration that includes all such monies taken out of ASCO by Rittlinger.

9. I would never have agreed to the Investment Banking Agreement if it did not include subparagraph 2(vi), since that provision offers fundamental protection that EAG's fee will be calculated based on the total fair value of ASCO (including present cash and other assets, and future profitability) rather than a value diminished by distributions unrelated to any proper business purpose.

3

10. ASCO argues that it would be inflammatory and prejudicial to admit evidence that Rittlinger used ASCO funds for home repairs, loans to friends, payments to family members, automobile expenses and the like. If ASCO stipulates that the amounts represented to Blue Point to be "Add-Backs," and the other amounts taken out of ASCO by Rittlinger, constitute Consideration under the Investment Banking Agreement, there will be no need to examine any witness concerning the nature of those amounts. Thus far, ASCO has refused to so stipulate. Rittlinger, in his deposition, attempted to back-track and assert that some amounts that were represented to Blue Point to be "Add-Backs" might, in part, have been proper business expenses. Such inconsistent positions are certainly admissible for the purposes of determining credibility. If Rittlinger now chooses to claim that some of the expenses might have had some proper business purpose, EAG is certainly entitled to introduce evidence concerning the nature of those expenses.

11. ASCO also argues that it would cause unfair prejudice to suggest that the "Add-Back" expenses, and other amounts taken out of ASCO by Rittlinger, received improper tax treatment. Again, if ASCO stipulates that the subject amounts constitute Consideration under the Investment Banking Agreement, there will be no need to examine any witness concerning the tax treatment of those amounts. In the absence of such an admission or stipulation, EAG is entitled to inquire as to the tax treatment of those expenses, and whether or not that tax treatment is consistent with Rittlinger's testimony.

12. Finally, ASCO attempts to exclude from trial any evidence of services performed by EAG for the benefit of ASCO prior to January 13, 2004, the date of the Investment Banking Agreement. I understand that, in order for EAG to obtain any recovery on its claim for unjust enrichment, the Investment Banking Agreement must be found to be unenforceable. I

further understand that EAG may support its unjust enrichment claim by introducing evidence concerning the services performed by EAG which result in ASCO being unjustly enriched by the Blue Point Transaction. EAG performed many services for ASCO from 1999 to mid-2004, as alleged in paragraph 49 of EAG's Amended Complaint (a copy of the Amended Complaint is attached as Exhibit C to the Fisher Decl.). Those services were of actual benefit to ASCO, as reflected in the terms of the Blue Point Transaction. EAG should be permitted to introduce evidence of all such services whenever they may have been performed. Since these services relating to the unjust enrichment claim will not be considered unless the Investment Banking Agreement is found to be unenforceable, there is no reason to limit the evidence to services only performed after the date of that agreement.

13. ASCO submits a portion of my deposition transcript in which I gave the following answers:

> "Q. And during the same period of time [May 2002 until January 2004], were there any fees that were owed to you or to the Edward Andrews Group?
>
> "A. Other than what we just discussed?
>
> "Q. Yes.
>
> "A. Not that I'm aware of."

Transcript of deposition of Timothy E. Brog, taken on January 16, 2008, at p. 107 (copy attached as Exhibit B to the Fisher Decl.).

14. EAG was not owed a fee by ASCO with respect to any Extraordinary Transaction involving ASCO between May 2002 and January 2004 because there were no Extraordinary Transactions involving ASCO during that time period. EAG had not been compensated for its investment banking advisory services during the period from 1999 through

5

mid-2004 because a fee would only be due upon the occurrence of an Extraordinary Transaction. The Blue Point Transaction in March 2007 finally constituted the Extraordinary Transaction for which EAG would receive compensation for its many years of investment banking advisory services.

15. ASCO's Motion should be denied in its entirety.

_____
TIMOTHY E. BROG

State of New York )
                 ) ss:
County of New York )

Subscribed and sworn to before me this 19th day of March 2008, by Timothy E. Brog.

_____
Notary Public

ERIN ANDERSON
Notary Public - State of New York
NO. 01AN6180183
Qualified in Kings County
My Commission Expires 1/7/2012

6