UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THE EDWARD ANDREWS GROUP, INC.,

                Plaintiff,                    07 Civ. 4607 (AJP)

    -against-

ADDRESSING SERVICES COMPANY, INC.

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## DEFENDANT'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION *IN LIMINE*
## AND IN SUPPORT OF CROSS-MOTION

Eric B. Fisher, Esq.
MORGENSTERN FISHER & BLUE, LLC
885 Third Avenue
New York, New York 10022
Telephone: (212) 750-6776
Direct Facsimile: (646) 349-2816
Email: efisher@mfbnyc.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

Introduction ............................................................................................................... 1

EAG's Motion Should Be Denied ............................................................................... 2

    A.   EAG Released ASCO ....................................................................................... 2

    B.   The Release Bars EAG's Claims In This Case ....................................................... 7

Conclusion ................................................................................................................ 10

Defendant Addressing Services Company ("ASCO") respectfully submits this memorandum of law in opposition to the motion *in limine* filed by plaintiff The Edward Andrews Group ("EAG"), and in support of ASCO's cross-motion for an order (i) granting ASCO leave to file a motion for summary judgment or (ii) in the alternative, precluding EAG from contending at trial that the language of the release does not bar EAG's claims.[1]

## I.    **Introduction**

In this case, EAG claims that ASCO owes it a "success fee" under an investment banking agreement dated January 13, 2004 (the "Investment Banking Agreement"), as a result of a March 2007 transaction between ASCO and Blue Point Capital Partners. In the alternative, EAG claims that it is entitled to recover its "success fee" on a theory of unjust enrichment.

At trial, ASCO plans to introduce evidence to show that EAG released ASCO from the claims it now asserts. The fact that EAG released ASCO is, of course, central to ASCO's defense in this case. EAG's motion *in limine* seeks to altogether prevent presentation of the release defense to the jury. As explained below, EAG's motion is without merit and should be denied.

Moreover, in response to EAG's *in limine* motion, ASCO hereby cross-moves for an order (i) granting ASCO leave to file a motion for summary judgment or (ii) in the

---

[1]    EAG's first point in its *in limine* motion seeks to preclude ASCO from arguing that EAG's claims are barred as a result of the litigation and ultimate settlement of the Prior Action between EAG and ASCO. ASCO does not intend to advance any such argument at trial. While ASCO respectfully reserves its right to make use of EAG's statements in the Prior Action as may be relevant to issues in this case and for impeachment, ASCO will not argue that the Prior Action bars the claims in this action.

alternative, precluding EAG from contending at trial that the language of the release does not bar EAG's claims.

## II.    **EAG's Motion Should Be Denied**

According to EAG, "ASCO should be barred from introducing any evidence and argument at the trial of this action in support of any assertion that EAG's claims are barred by any purported release." Affidavit of David C. Burger dated March 6, 2008 ("Burger Aff.") ¶19. In support of this request, EAG (i) disputes that it released ASCO; *id.* ¶ 12; and (ii) contends that, even if EAG released ASCO, the release does not bar the claims in this action, *id.* ¶ 19. These same contentions have been asserted by EAG in numerous filings with this Court, and the first of these two contentions was sworn to by Timothy Brog at his deposition. These two contentions are addressed in turn below. They are baseless.

### A.    **EAG Released ASCO**

Some background is necessary to understand the release issue: In August 2004, EAG filed suit against ASCO, seeking payment under a Consulting Agreement that was entered into at the same time as the Investment Banking Agreement. The Consulting Agreement, which was the subject of the earlier litigation, was entered into to resolve a dispute between the parties concerning EAG's introduction of a business opportunity to ASCO. The business opportunity involved a joint venture between ASCO and an individual named Jeffrey Klein, among others. EAG threatened to sue to block the Jeffrey Klein business venture from moving forward. To resolve that dispute, ASCO entered into the Consulting Agreement with ASCO, agreeing to pay substantial sums to EAG. According to ASCO, in exchange for payments under the Consulting Agreement,

EAG released ASCO from any claims arising out of or concerning the Jeffrey Klein business opportunity. Although EAG admits that it released Jeffrey Klein and certain other parties, EAG denies having granted any such release to ASCO. Discovery has not turned up any signed versions of EAG's release of ASCO.

There is overwhelming evidence – including admissions by EAG – that EAG released ASCO. Indeed, the very exhibits attached to the Burger Affidavit directly refute Mr. Burger's sworn assertion that ASCO was not released. For example, in its Complaint dated August 18, 2004 (the "Prior Complaint") in Civil Action 04-6731 (LTS) (the "Prior Action"), *EAG admitted that it released ASCO*. According to the Prior Complaint, which was signed by Mr. Burger: "In consideration of…(iii) *EAG releasing Klein and ASCO* from any liabilities…EAG and ASCO agreed, among other things, that ASCO would pay EAG $8300 per month…." Prior Complaint ¶ 12 (emphasis added) (A copy of the Prior Complaint is attached as Exhibit A to the Burger Affidavit.) The Prior Action, in which EAG prevailed against ASCO on summary judgment, concerned a Consulting Agreement that was executed at the same time as the Investment Banking Agreement at issue in this case. To establish that the Consulting Agreement was enforceable, EAG alleged in its complaint that the release of ASCO was part of the consideration for that agreement. Consequently, EAG is judicially estopped from now asserting that EAG did not release ASCO. *See generally Dapelo v. Banco Nacional de Mexico*, 1993 U.S. Dist. LEXIS 6185, at *9 (S.D.N.Y. 1993) (judicial estoppel "sometimes called 'preclusion by inconsistent positions' protects judicial integrity by preventing a litigant from playing 'fast and loose' with the court.").

Further, the Consulting Agreement itself, which was the subject of the Prior
Action, states that EAG released ASCO. According to paragraph 11 of the Consulting
Agreement, which is attached as Exhibit A to the Prior Complaint: "Simultaneously with
the execution of this Agreement, ***the parties hereto*** and Jeffrey Klein ***shall execute
Releases*** in the form attached hereto as Exhibit A." ASCO and EAG are the only parties
to the Consulting Agreement. Thus, this paragraph in the Consulting Agreement plainly
and unambiguously required the exchange of releases between EAG and ASCO.

Finally, the above evidence that EAG released ASCO is fully-consistent with
Michael Rittlinger's sworn deposition testimony:

> Tim [Brog of EAG] basically was going to sue everyone and – and
> we were at a standstill for weeks, maybe months. And again, Jeff
> [Klein] – Jeff wasn't going to move ahead unless every party was
> release[d] protected and that included himself, his father, Burke,
> Welti, ***ASCO***, Tim. ***Everyone was – everyone had to be released.***
> That was it. There was no ands, ifs or buts about it. The guy
> wasn't going to move ahead unless everyone was protected.

Rittlinger Tr. at 42:10-19 (emphasis added). (Relevant excerpts from Michael
Rittlinger's deposition transcript are attached as **Exhibit A** to the Fisher Declaration
dated March 20, 2008.)

Thus, according to EAG's Prior Complaint, the Consulting Agreement and
Michael Rittlinger's deposition testimony, ASCO was released.[2] The only "evidence" to
the contrary is Mr. Brog's/EAG's deposition testimony in this action, in which Mr. Brog
flatly denied that EAG released ASCO. That testimony is unsupported by any other facts
in the discovery record and contradicts EAG's earlier pleading.

---

2    Of course, this is not the only evidence that EAG released ASCO, and ASCO plans to
introduce additional evidence at trial.

4

Moreover, EAG has obstructed discovery concerning the release defense.

Specifically, the unique document identifiers that appear in the lower corner of each of

Defendant's Exhibits J through P (attached as Exhibit E to the Burger Affidavit) indicate

that the releases were created and/or modified by the law firm of Robinson Brog. EAG

erroneously disputes that the documents were created and/or modified by the Robinson

Brog firm, but likely concedes that the documents were saved on the Robinson Brog

computer network. In any event, according to Mr. Brog's deposition testimony, the

Robinson Brog computer network, as well as the firm's paper files, was not searched for

documents responsive to ASCO's requests in this case, even though Timothy Brog's

father, a partner at Robinson Brog, represented EAG in connection with the drafting and

negotiation of the Consulting Agreement.[3] This is a noteworthy discovery failure on the

---

3    Q. Who was the attorney at Robinson Brog providing legal advice at the time?
    A. I believe there were several.
    Q. Who?
    A. One of them was my father, Evan Brog, and I believe some associates. I don't – I don't remember who. They might have been partners. I don't remember who; other lawyers at the firm.
    Q. Do you know whether a search has been conducted through the files of Robinson Brog for documents that relate to the negotiation and ultimate execution of [the Consulting Agreement]?
    A. I don't believe – I don't believe they have any documents.
    Q. *But do you know whether a search has been done?*
    A. *I did not request that a search be done.*
    Q. *Do you know whether a search has been done?*
    A. *I do not know.*
    Q. And why do you think that they don't have any documents?
    A. Because whenever a matter gets finished, typically all drafts get either sent to me or thrown away.
    Q. In this instance, were all drafts sent to you or were they thrown away.
    A. I don't remember.
    Q. Well, do you know if they were sent to you?
    A. I don't remember.
    Q. Is there someone else who might remember whether they were sent to you?
    A. I don't – I don't know who at Robinson Brog is in charge of sending documents out or sending that out of storage, so I can't answer that question.

part of EAG. Since Robinson Brog represented EAG in connection with the Consulting Agreement, one would expect correspondence concerning the release issue to be found in Robinson Brog's hard-copy and electronic files. This discovery failure should further curtail EAG's ability to deny that the release is in effect.

By letter to this Court after the close of discovery, ASCO indicated that it would not move for summary judgment. During the course of working on the JPTO with EAG's counsel and responding to EAG's *in limine* motion, the issues in this case crystallized in such a way that ASCO now believes that the release defense may be amenable to resolution on summary judgment. Essentially, except for Mr. Brog's unsupported deposition testimony to the contrary, all of the evidence lines up in favor of a finding that EAG released ASCO. In a summary judgment context, Mr. Brog's testimony would be insufficient to overcome the compelling evidence to the contrary, which includes an unambiguous party admission in a pleading. *See, e.g., Golden Pacific Bancorp v. FDIC*, 375 F.3d 196, 200 (2d Cir. 2004) ("the non-moving party may not rely on mere conclusory allegations nor speculation, but must instead offer some hard evidence showing that its version of the events is not wholly fanciful"); *Friedman v. Coldwater Creek, Inc.*, 06 Civ. 4785 (LAP), 2008 U.S. Dist. LEXIS 7371, at *10 (S.D.N.Y. Jan. 28, 2008) ("the party opponent must set forth specific facts showing that there is a genuine issue for trial") (quotations omitted). Accordingly, ASCO respectfully requests that the Court consider this brief to also constitute a request for a pre-motion conference, concerning whether ASCO should be afforded leave to move for summary judgment on the release defense. ASCO would be prepared to move for summary

Brog Tr. at 160:20-162:10 (emphasis added). (Relevant excerpts from Timothy Brog's deposition transcript are attached as **Exhibit B** to the Fisher Declaration.)

judgment on an expedited basis, so as not to delay the May 27, 2008 trial date, in the event that the motion for summary judgment is denied.

### B.    The Release Bars EAG's Claims In This Case

As a matter of law, the release bars EAG's claims.  All possible versions of the release of ASCO provide that the release:

> Releases…all actions…whatsoever, ***arising out of and/or concerning*** the introduction by RELEASOR [EAG] of Jeffrey Klein and ASCO, and ***the business opportunity and/or business relationship that ensued between Jeffrey Klein….and ASCO***, except that this release does not release any claims…arising out of a Consulting Agreement made as of the __ day of January, 2004, between ASCO and THE EDWARD ANDREWS GROUIP, INC. (emphasis added).

Thus, for purposes of deciding EAG's motion *in limine*, the relevant question is whether the Investment Banking Agreement arises out of or concerns EAG's introduction of Jeffrey Klein to ASCO and the ensuing business relationship between them.

Taking an implausible position completely at odds with many previous statements and filings in this very case, EAG asserts that its claim for a fee under the Investment Banking Agreement does <u>not</u> arise out of or concern the business opportunity and relationship between Jeffrey Klein and ASCO.  This is wrong.

Referring to the business venture between ASCO and Jeffrey Klein, EAG's Amended Complaint in this action states clearly that the Investment Banking Agreement was part of a "Settlement [that] resolved a dispute over a potential business opportunity that EAG introduced to ASCO, including EAG's rights to participate in that business opportunity."  Amended Complaint ¶¶ 7-8; *see also id.* ¶ 36.  (A copy of the Amended Complaint in this action is attached to the Burger Affidavit as Exhibit D.)  Similarly, the Prior Complaint alleges that the Consulting Agreement, and hence the Investment

7

Banking Agreement as well, concerned resolution of the dispute concerning the

ASCO/Jeffrey Klein business opportunity. Prior Complaint ¶¶ 9-10.

Further, according to paragraph 3 of the Investment Banking Agreement: "The

parties entered into this Engagement Letter [*i.e.*, the Investment Banking Agreement] as

part of a settlement and simultaneously with the Consulting Agreement…" Similarly,

according to the "whereas" clause in the Consulting Agreement: "Whereas, Consultant

introduced to Client a potential opportunity (the 'Business Opportunity')…"

Moreover, in the Preliminary Pre-Trial Statement in this case dated October 2,

2007, EAG wrote: "The Investment Banking Agreement and the Consulting Agreement

were simultaneously executed by EAG and ASCO as part of the Settlement that resolved

a dispute over a potential business opportunity that EAG introduced to ASCO, including

EAG's rights to participate in that business opportunity." (A copy of the Preliminary

Pre-Trial Statement is attached as **Exhibit C** to the Fisher Declaration.) Along those

same lines, at an October 9, 2007 conference before Judge Swain, EAG's counsel stated:

> I would just like to also mention, your Honor, that the contract, on
> its face, indicates that it was entered into as part of a settlement
> with respect to other services that had been performed for the
> defendant and my client, in that settlement, my client claimed that
> he was entitled to participate in a particular business opportunity
> and he gave up that claim and other related claims as part of the
> settlement which resulted in the investment banking agreement….

October 9, 2007 Hearing Tr. at 4:12-19. (A copy of the hearing transcript is attached as

**Exhibit D** to the Fisher Declaration.) Indeed, as recently as the Joint Pretrial Order

("JPTO") in this case, EAG indicated that Mr. Brog would testify about the "settlement

giving rise to the Investment Banking Agreement." JPTO at 5. (A copy of the JPTO is

attached as **Exhibit E** to the Fisher Declaration.)

8

In light of the above, EAG cannot maintain at trial that the claims in this action do not arise out of or concern "the business opportunity and/or business relationship that ensued between Jeffrey Klein....and ASCO." Because "the present complaint falls within the parameters of those claims barred by the [] Release," *Nair v. Carmichael*, 2004 U.S. Dist. LEXIS 21123, at *11 (D. Conn. Sept. 30, 2004), as a matter of law, EAG should be precluded from arguing that the release does not bar its claims. *See generally Sutherland v. Touhey*, 182 F.3d 901, 901 (2d Cir. 1999) (release's language "unambiguously precludes the instant action in its entirety"); *Worth Construction Co., Inc. v. ITRI Masonry Corp.*, 2001 U.S. Dist. LEXIS 2144 (S.D.N.Y. Feb. 21, 2001) ("Courts routinely uphold releases that are clear and unequivocal."); K&S Co. v. Sexton Inv. Co., 1999 U.S. Dist. LEXIS 1701, at *14 (S.D.N.Y. 1999) (granting summary judgment because claims were released).

In a misguided attempt to salvage some fraction of its two claims, EAG argues that the release does not bar its unjust enrichment claim because that claim concerns services rendered from approximately 1999, "which largely pre-dated the introduction of Jeffrey Klein and ASCO, and therefore necessarily addressed subjects completely unrelated to Jeffrey Klein's relationship with ASCO." Burger Aff. ¶ 17. EAG's unjust enrichment claim, however, should be limited to periods after January 2004 for the reasons already set forth in ASCO's *in limine* motion filed on March 6, 2008. As explained in more detail in Point II of ASCO's memorandum of law in support of that motion, Mr. Brog, on behalf of EAG, testified at his deposition that he was not owed any money by ASCO as of January 2004, which is the date of the Investment Banking Agreement. Moreover, the unjust enrichment claim, like the contract claim, seeks to

9

recover a fee linked to the Blue Point transaction. It is not a claim to be compensated for amorphous services allegedly rendered over many years. As EAG wrote in the Agreed Statement of Case at page 17 of the JPTO: "EAG also claims that ASCO would be unjustly enriched at EAG's expense if ASCO does not *pay a fee* to EAG." (emphasis added). Thus, the unjust enrichment claim – like the contract claim – seeks legal damages based upon the Blue Point transaction. EAG's last-minute effort to shift the focus of this trial away from the January 2004 Investment Banking Agreement should not be permitted.

## CONCLUSION

For the reasons set forth above, ASCO respectfully requests that this Court enter an order: (i) denying EAG's motion *in limine*; (ii) granting ASCO leave to file a motion for summary judgment (iii) in the alternative, precluding EAG from contending at trial that the language of the release does not bar EAG's claims; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
         March 20, 2008

MORGENSTERN FISHER & BLUE, LLC

By: /s/ Eric B. Fisher
        Eric B. Fisher
        885 Third Avenue
        New York, New York 10022
        Telephone: (212) 750-6776
        Direct Facsimile: (646) 349-2816
        efisher@mfbnyc.com

*Attorneys for Defendant*

10