UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
THE EDWARD ANDREWS GROUP INC., :

                Plaintiff, :   07 Civ. 4607 (LTS)

   -against- :   **PRELIMINARY PRE-TRIAL STATEMENT**

ADDRESSING SERVICES COMPANY, INC., :

                Defendant. :
------------------------------------------------------X

      In compliance with the Court's Revised Scheduling Order, Plaintiff The Edward Andrews Group Inc. ("EAG"), by its attorneys Robinson Brog Leinwand Greene Genovese & Gluck P.C., and Defendant Addressing Services Company, Inc. ("ASCO"), by its attorneys Morgenstern Jacobs & Blue, LLC, submit this Preliminary Pre-Trial Statement:

A.   **Nature Of Action**

      EAG asserts that, as part of a settlement of other disputes between EAG and ASCO, EAG and ASCO entered into an investment banking agreement, dated January 13, 2004 ("Investment Banking Agreement"). The Investment Banking Agreement provides, inter alia, that:

> "EAG shall be the Company's exclusive financial advisor from the date hereof until 24 months following the termination of any relationship between the Company and Jeffrey Klein (the 'Period'). A Success Fee, as described in Section 2 hereof, shall be paid to EAG if there is an Extraordinary Transaction involving the Company [during certain time periods]."

1

EAG asserts that a "Success Fee" is due pursuant to the Investment Banking Agreement in an amount not less than $400,000, and pleads claims for breach of contract and unjust enrichment. ASCO denies that the Investment Banking Agreement is an enforceable agreement. ASCO further asserts that, even in the event that the Court determines that the Investment Banking Agreement is enforceable, ASCO is not liable under the agreement because EAG failed to render services required under the agreement.

**B.     Jurisdiction**

It is undisputed that this Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a). EAG is a New York corporation with its principal place of business in New York. ASCO is a Connecticut corporation with its principal place of business in Connecticut. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

**C.     Uncontested Facts**

1. ASCO is engaged in the business of direct mailing.

2. EAG and ASCO executed two written agreements: (a) a consulting agreement, dated January 13, 2004; and (b) the Investment Banking Agreement, also dated January 13, 2004. Copies of those agreements are attached as Exhibits A and B to the Complaint.

3. In prior litigation concerning the Consulting Agreement, summary judgment was entered in favor of EAG with respect to monies owed by ASCO to EAG. After the entry of a final judgment against ASCO in the amount of $495,786.25, the prior litigation was settled. See The Edward Andrews Group Inc. v. Addressing Services Company, Inc., 04 Civ. 6731 (LTS) (S.D.N.Y.) (the "Prior Litigation").

4. The Investment Banking Agreement states that EAG was retained as, inter alia, the "exclusive financial advisor in connection with all Extraordinary Transactions involving the Company [i.e. ASCO]."

5. The Investment Banking Agreement states that:

> "As consideration for EAG's services hereunder, upon successful completion by the Company or any of the Shareholders of an Extraordinary Transaction with any party, the Company shall pay EAG a cash fee (the 'Success Fee') equal to 4% of the aggregate Consideration or value from such Extraordinary Transaction received by the Company or the Shareholders. Notwithstanding the above formula, the Success Fee shall be a minimum of $100,000. The Success Fee shall be due and payable in cash at the closing of the transaction and a condition precedent to closing."

Investment Banking Agreement, at p. 1, ¶ 2.

6. The Investment Banking Agreement states that:

> "The term 'Extraordinary Transaction' shall be deemed to include, but not limited to, the sale of the Company or any of its assets, an initial public offering, or any transaction entered into by the Company or the Shareholders out of the ordinary course of its business."

Investment Banking Agreement, at p. 2, ¶ 2.

7. The Investment Banking Agreement states that::

> "The term 'Consideration' shall be deemed to include, but not limited to, (i) the amount of equity investment(s) in the Company, (ii) loans to the Company, (iii) proceeds received from the sale of the assets of the Company, (iv) the assumption (whether through the sale of assets or securities) of all indebtedness (which includes capital leases), (v) proceeds received by the Shareholders of the Company from the sale of securities, (vi) distributions, dividends and bonuses of any kind

3

> to Shareholders after the date of this Agreement, but only to the extent that the aggregate of all such distributions, dividends, dividends [sic] and bonuses exceed $200,000 and (vii) stock, cash, debt instruments, or anything of value received by the Company or the Shareholders in any merger, consolidation or any Extraordinary Transaction."

Investment Banking Agreement, at p. 2, ¶ 2.

8. Paragraph 3 of the Investment Banking Agreement states, inter alia, that: "The parties entered into this [Investment Banking Agreement] as part of a settlement ["Settlement"] and simultaneously with the Consulting Agreement, between [ASCO] and EAG, dated January 13, 2004."

9. EAG sent a letter, dated October 10, 2005, to ASCO ("October 10, 2005 Letter"), stating, inter alia, that:

> "Notwithstanding the fact that we are in a dispute over our Consulting Agreement, dated January 13, 2004, EAG is ready, willing and able to (i) provide financial and strategic advice and (ii) introduce the Company to potential acquirors and/or strategic or financial partners, if in fact you are considering an Extraordinary Transaction (as defined in the Investment Banking Agreement). I hope you choose to utilize EAG's expertise and contacts. Please be aware, however, that even if you choose not to let EAG assist ASCO, pursuant to our Investment Banking Agreement, ASCO and Michael Rittlinger will still be obligated to pay EAG a Success Fee (as defined therein) if ASCO consummates an Extraordinary Transaction."

October 11, 2005 Letter, copy attached to the Complaint as Exhibit C.

10. ASCO did not reply to the October 10, 2005 Letter.

11. EAG sent a letter, dated November 3, 2005, to ASCO ("November 3, 2005 Letter"), stating, inter alia, that:

4

> "[EAG] remain[s] ready, willing and able to (i) provide financial and strategic advice and (ii) introduce [ASCO] to potential acquirors and/or strategic or financial partners, if in fact you are considering an Extraordinary Transaction (as defined in the Investment Banking Agreement). I hope you choose to utilize EAG's expertise and contacts. Please be aware, however, that even if you choose not to let us assist ASCO, pursuant to the Investment Banking Agreement, ASCO and Michael Rittlinger will still be obligated to pay EAG a Success Fee (as defined therein) if ASCO consummates an Extraordinary Transaction."

A copy of the November 3, 2005 Letter is attached to the Complaint as Exhibit D.

12. ASCO did not reply to the November 3, 2005 Letter.

13. The Investment Banking Agreement states that:

> "EAG shall be the Company's exclusive financial advisor from the date hereof until 24 months following the termination of any relationship between the Company and Jeffrey Klein (the 'Period'). A Success Fee, as described in Section 2 hereof, shall be paid to EAG if there is an Extraordinary Transaction involving the Company (a) during the Period (which shall be extended if discussions are in progress at that time) or (b) during the twenty four months following the Period (which shall be extended if active negotiations are in progress at that time), if EAG, the Company or any Shareholder had any contact with such entity during the Period."

Investment Banking Agreement, at p. 3, ¶ 6.

14. Michael Rittlinger, the President of ASCO, was deposed on April 15, 2005 in the Prior Litigation. Rittlinger testified, inter alia, as follows:

> "Q. As of today, are Jeffrey Klein and First Party Services still performing under the Consulting Agreement that we had marked as Rittlinger Exhibit 10?
> "A. Right, they are."

5

Transcript, at p. 68, line 23 through p. 69, line 3.

15. Klein was deposed as a non-party witness on April 25, 2005 in the Prior Litigation. Klein testified, inter alia, as follows:

> "Q. What is the status of your relationship today, if any, with ASCO?
> "A. My relationship is ongoing."
> ...
> "Q. Do you have, as you sit here today, any understanding with ASCO as to any continuing relationship that you and/or First Party Services, Inc. have with ASCO after April 27, 2005?
> "A. Mr. Rittlinger has told me he would like to keep our relationship ongoing through August 31.
> "Q. 2005?
> "A. Correct."

Transcript, at p. 45, lines 4-6, and p. 46, line 23 through p. 47, line 8.

16. If the Investment Banking Agreement were enforceable, the transaction between ASCO and Blue Point Capital Partners ("Blue Point") that occurred on or about March 16, 2007 would fit within the definition of an Extraordinary Transaction, as that term is defined in the Investment Banking Agreement.

17. EAG has demanded that ASCO pay a fee pursuant to the Investment Banking Agreement based on the transaction between ASCO and Blue Point.

D.  **Uncontested Legal Issues**

New York law applies to this dispute.

E.  **Legal Issues To Be Decided By The Court**

1. Whether the Investment Banking Agreement is an enforceable contract?

6

2. Whether EAG was required to render services under the Investment Banking Agreement and, if so, whether the required services were rendered by EAG?

3. Whether EAG is estopped from enforcing the Investment Banking Agreement as a result of positions that it asserted in the Prior Litigation?

4. Whether settlement of the Prior Litigation released EAG's claims against ASCO under the Investment Banking Agreement?

5. Whether ASCO is liable for unjust enrichment?

F. **Material Disputed Facts**

I. **Plaintiff**

1. The Investment Banking Agreement and the Consulting Agreement were simultaneously executed by EAG and ASCO as part of the Settlement that resolved a dispute over a potential business opportunity that EAG introduced to ASCO, including EAG's rights to participate in that business opportunity.

2. EAG entered into the Consulting Agreement as part of the Settlement and thereby relinquished other rights and claims based, at least in part, on services previously performed for the benefit of ASCO and on ASCO's simultaneous execution of the Investment Banking Agreement including, but not limited to, the provisions thereof which require ASCO to pay a Success Fee to EAG.

3. The claims resolved in the Settlement constituted consideration for both the Consulting Agreement and the Investment Banking Agreement. In addition, the execution of the Consulting Agreement and the Investment Banking Agreement each constituted consideration for the other.

4. On or about March 16, 2007, a press release was issued by Blue Point stating, <u>inter alia</u>, that Blue Point "has recapitalized [ASCO]" and describing the transaction as Blue Point's "acquisition of ASCO."

5. The initial twenty-four month Period during which a Success Fee would be owed to EAG under the Investment Banking Agreement extended to at least April 15, 2007, based on Rittlinger's deposition testimony that Klein was performing services for ASCO as of April 15, 2005.

6. Since negotiation between ASCO and Blue Point occurred during the initial twenty-four month Period of the Investment Banking Agreement, the term of the Investment Banking Agreement was extended for an additional twenty-four month period, through at least April 15, 2009. <u>See</u> Investment Banking Agreement, at p. 3, ¶ 6(b).

7. The transaction between ASCO and Blue Point that occurred on or about March 16, 2007, was within the initial Period of the Investment Banking Agreement, and within the twenty-four month extension of that Period, pursuant to the provisions of the Investment Banking Agreement.

8. Upon information and belief, the transaction between ASCO and Blue Point involved Consideration (as that term is defined in the Investment Banking Agreement) in excess of $10 million.

9. EAG has performed services pursuant to the Investment Banking Agreement for the benefit of ASCO. EAG has performed, and/or has proffered its performance of, all of its obligations under the Investment Banking Agreement.

10. ASCO breached the Investment Banking Agreement by failing to pay monies owed to EAG by ASCO pursuant to the terms of the Investment Banking Agreement.

11. ASCO is indebted to EAG under the Investment Banking Agreement in the minimum amount of $100,000.00, and, upon information and belief, in an amount exceeding $400,000.00, together with interest thereon.

12. EAG would never have entered into the Settlement and the Consulting Agreement and would never have relinquished other rights and claims if ASCO had not simultaneously executed the Investment Banking Agreement.

13. ASCO's failure and refusal to pay fees to EAG with respect to the Extraordinary Transaction between ASCO and Blue Point unfairly enriches ASCO at the expense of EAG in an amount exceeding $400,000.00, together with interest thereon.

## II. Defendant

1. The Investment Banking Agreement required EAG to render financial advisory and investment banking services (the "Services") to ASCO.

2. The Services constituted the consideration for the Investment Banking Agreement.

3. EAG never rendered the Services contemplated by the Investment Banking Agreement.

4. In the Prior Litigation about the Consulting Agreement, EAG asserted positions that are inconsistent with its current position that the Consulting Agreement constitutes consideration for the Investment Banking Agreement. Further, EAG waived its right to sue ASCO under the Investment Banking Agreement.

5. EAG's October 10, 2005 and November 3, 2005 letters referred to above in Plaintiff's statement of facts, were self-serving, disingenuous offers that were made in the midst of a bitter litigation that EAG commenced against ASCO.

6. EAG purported to offer to render services after it learned through wrongful means about the pending transaction with Blue Point.

7. In any event, EAG never rendered any services to ASCO in connection with the transaction with Blue Point.

### G. Plaintiff's Causes Of Action

1. Breach of contract based on New York common law.

2. Unjust enrichment based on New York common law.

### H. Defendant's Defenses

1. The Investment Banking Agreement is not enforceable.

2. EAG failed to render services under the Investment Banking Agreement.

3. ASCO has not been unjustly enriched.

4. EAG is estopped from suing under the Investment Banking Agreement.

5. EAG released its claims under the Investment Banking Agreement in the Prior Litigation.

### I. Burden Of Proof

#### 1. Causes Of Action

Plaintiff EAG has the burden of proof by a preponderance of the evidence with respect to the causes of action for breach of contract and unjust enrichment.

10

### 2. Defenses

Defenses 1, 4 and 5 set forth above are affirmative defenses, as to which ASCO bears the burden of proof.

### J. Amendments

In response to Defendant's pending motion to dismiss the Plaintiff's unjust enrichment claim, Plaintiff filed a pending motion for leave to file an amended complaint. No other amendments or addition or substitution of parties are currently believed to be necessary.

### K. Consent To Transfer To Magistrate Judge

The parties do not at this time consent to the transfer of this action to a Magistrate Judge for all purposes.

### L. Rule 26(a) Disclosures

Rule 26(a) disclosures have been made by both parties.

### M. Disclosure

Disclosure may be needed with respect to document production, party depositions and non-party depositions concerning, inter alia, the Investment Banking Agreement and the transaction between ASCO and Blue Point. EAG proposes a discovery cut-off date of December 31, 2007. ASCO proposes a discovery cut-off date of January 31, 2008.

### N. Expert Discovery

It is not currently anticipated that there will be any need for expert discovery in this action. ASCO reserves its right to assert that expert discovery is necessary with regard to industry custom concerning the services to be rendered under

11

the Investment Banking Agreement. EAG reserves the right to object to any alleged need for expert discovery, and to respond to the designation of any expert witness by ASCO in any appropriate manner, including the designation of an expert on behalf of EAG.

**O.     Limitations On Discovery**

It is not currently anticipated that there should be any changes in the limitations on discovery imposed by the Federal Rules of Civil procedure and the Local Rules.

**P.     Settlement Discussions**

The parties have not yet had any substantive settlement discussions.

**Q.     Trial**

Plaintiff EAG states that this case should be tried without a jury, and estimates that its case will be presented in one trial day. Defendant ASCO states that this case should be tried to a jury and estimates that its case will be presented in one trial day. EAG states that ASCO's answer did not include any jury demand and therefore EAG asserts that ASCO has waived any jury demand.

**R.     Other Orders**

It is not currently anticipated that the Court should enter any other orders.

Dated: October 2, 2007

| ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C. | MORGENSTERN JACOBS & BLUE, LLC |
|---|---|
| By: *(signed)* | By: *(signed)* |
| David C Burger (DB-8666) | Eric B. Fisher (EF-1209) |
| 1345 Avenue of the Americas | 885 Third Avenue |
| New York, New York 10105 | New York, New York 10022 |
| (212) 603-6361 | (212) 750-6776 |
| **Attorneys for Plaintiff** | **Attorneys for Defendant** |