UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
THE EDWARD ANDREWS GROUP INC.,  :

                Plaintiff,  :     07 Civ. 4607 (AJP)

      -against-  :

ADDRESSING SERVICES COMPANY, INC.,  :

                Defendant.  :
------------------------------------------------------X

### REPLY AFFIDAVIT OF TIMOTHY E. BROG

STATE OF NEW YORK   )
                          ) ss.:
COUNTY OF NEW YORK  )

      **TIMOTHY E. BROG**, being duly sworn, deposes and says:

      1.    I am the President of Plaintiff The Edward Andrews Group Inc. ("EAG"), and I submit this reply affidavit in further support of EAG's motion in limine ("Motion") and in opposition to ASCO's cross-motion for leave to file a motion for summary judgment.

      2.    Defendant Addressing Services Company, Inc. ("ASCO") cites an allegation of background facts included in the complaint in a prior action between these parties, captioned The Edward Andrews Group Inc. v. Addressing Services Company, Inc., 04 Civ. 6731 (S.D.N.Y.) ("Prior Action"). Paragraph 12 of the complaint in the Prior Action alleged that:

> "In consideration of (i) ASCO being introduced to the Business Opportunity, (i) [sic] EAG waiving its rights under the Non-Circumvention Agreement, (ii) EAG waiving its rights to participate in the Business Opportunity, (iii) EAG releasing Klein and ASCO from any liabilities, and (iv) EAG acting as an advisor to ASCO on the Business Opportunity and other matters, EAG and

> ASCO agreed, among other things, that ASCO would pay EAG $8,300.00 per month for a period of sixty (60) months for a total of $498,000.00."

Prior Action complaint, at ¶ 12 (copy attached as Exhibit A to the previously submitted affidavit of David C. Burger, sworn to on March 6, 2008 ("Burger Affidavit")).

3. Paragraph 12 of the Prior Action complaint related to background facts that were not material to the issue in the Prior Action, which was that ASCO initially made the monthly payments due to EAG under a consulting agreement but then ASCO simply decided not to make any of the further payments that were due. I clearly did not closely review paragraph 12 before the Prior Action complaint was filed. If I had closely reviewed that paragraph, I certainly would have: (a) corrected the mistaken reference to two subparts of the paragraph, both of which are numbered "(i)"; and (b) corrected the mistaken reference to EAG releasing ASCO.

4. EAG never agreed to release ASCO and EAG never executed any release in favor of ASCO.

5. The consulting agreement and the investment banking agreement, each dated January 13, 2004, were both executed by EAG and ASCO. The investment banking agreement, at ¶ 3, specifically recites that: "The parties entered into this Engagement Letter as part of a settlement and <u>simultaneously</u> with the Consulting Agreement, between [ASCO] and EAG, dated January 13, 2004." (emphasis added) (copy attached as Exhibit B to the complaint in the instant action, which is attached as Exhibit D to the Burger Affidavit).

6. ASCO is arguing that the investment banking agreement was null and void the instant it was signed because it was subject to a release under the simultaneously executed consulting agreement, even though no such release was ever executed or agreed to by the parties. I would not, and did not, sign the investment banking agreement as an act of futility.

2

7.  In fact, Michael Rittlinger, the principal of ASCO, has testified in his deposition that he intended to compensate EAG under the investment banking agreement at the time that agreement was signed and Rittlinger continued to have that intention for five or six months after January 2004, until EAG filed the Prior Action against ASCO:

> "Q. Okay. As of January 2004, did you have any intention one way or the other as to using the Edward Andrews Group with respect to any future transaction involving ASCO?
>
> "MR. FISHER: Objection to form.
>
> "A. As of January '04?
>
> "Q. Correct.
>
> "A. I did.
>
> "Q. And what was your intention at that time?
>
> "A. That Tim would have represented ASCO on the seller's side, this time trying to, you know, sell – sell my company.
>
> "Q. And for how long did that remain your intention?
>
> "A. Probably five or six months.
>
> "Q. And was there something that happened five or six months after January 2004 that caused your intention to change?
>
> "A. Yes.
>
> "Q. What was that?
>
> "A. Well, our business venture here went awry, as we all know, and I couldn't make payments to Tim because I was losing, you know, $50,000 a month minimum, and as the payments stopped, he sued me.
>
> "Q. Was it the service of the lawsuit on you that changed your intention?

> "A. That was certainly a big part of it."

Transcript of deposition of Michael Rittlinger, taken on January 23, 2008 ("Rittlinger Transcript"), at pp. 21/13-22/17 (copy attached hereto as Exhibit A).

> "Q. What was your understanding of that agreement [Brog deposition exhibit 15 – the investment banking agreement, dated January 13, 2004]?
>
> "A. That Tim upon, you know, signing this agreement, that Tim would represent ASCO, you know, on the seller's side, that he would, you know, bring – bring deals to the table and consult with me and provide, you know, quality services, you know, for his fee.
>
> "Q. I believe you testified earlier today that it was your intention to use Tim to represent ASCO on the seller's side, at least up until the time that you received the complaint in the first lawsuit, is that correct?
>
> "A. That's correct.
>
> "Q. And was it your intention to utilize Tim in that capacity under the terms of that agreement, Brog 15, with respect to any such sale of ASCO?
>
> MR. FISHER: Objection as to form.
>
> "A. I would have used Tim, yes, if things didn't get so soured."

Rittlinger Transcript, at pp. 45/18-46/14 (copy attached hereto as Exhibit A).

       8.     If the investment banking agreement was null and void due to a release under the simultaneously executed consulting agreement, Rittlinger and ASCO could not have had an intention to utilize EAG under the terms of the investment banking agreement for a period of five or six months after January 2004, with that intention changing only upon service of the complaint in the Prior Action.

9.  If Rittlinger actually believed that the investment banking agreement was nullified ab initio by a release under the simultaneously executed consulting agreement, Rittlinger certainly would have said that in his deposition, but he did not. Rittlinger's own testimony admits that the investment banking agreement was in his view operable for at least five or six months after January 2004, until Rittlinger believed that things had become "soured" due to the filing of the Prior Action. EAG's position, of course, is that the investment banking agreement continued to be binding on ASCO for the entire term of that agreement.

10.  ASCO takes the position in this case that EAG was obligated to perform services under the investment banking agreement, but failed to do so. In response, EAG takes the position that it provided services until ASCO intentionally prevented EAG from providing any such services and excluded EAG from being involved in the Blue Point transaction. In reply, ASCO argues that it was justified in preventing EAG from performing services. See, e.g., the Joint Pre-Trial Order, Section C – Issues to be tried, ¶¶ 2 & 3, relating to whether ASCO excluded EAG from providing any services under the investment banking agreement and having any role with respect to the transaction between ASCO and Blue Point, and whether ASCO was justified in excluding EAG.

11.  On the one hand, ASCO argues that EAG is not entitled to any fee under the investment banking agreement unless it performed services for those fees. On the other hand, ASCO is now apparently arguing that the investment banking agreement should be viewed as solely arising from a settlement of various issues, which included the business opportunity relating to Jeffrey Klein and ASCO. To the extent that EAG's entitlement to a fee under the investment banking agreement is in exchange for services to be rendered, that fee does not arise

from anything related to the Klein business opportunity but is the quid pro quo for the services to be rendered.

13. Even assuming that there was an agreement to release ASCO – which never existed, and even assuming that such a release had been executed – which never happened, the purported release would not bar EAG's entitlement to a fee under the investment banking agreement based on ASCO's own argument that the fee is based – in part or in whole – on services to be rendered.

13. Assuming, arguendo, that there was any release, Rittlinger's sworn testimony that he intended to pay EAG a fee under the investment banking agreement during a period of time that extended months after the date of the consulting agreement and any release contained therein, and the fact that EAG performed services under the investment banking agreement for a period of approximately five months until ASCO prevented such performance, and the fact that the consulting agreement and the investment banking agreement were executed simultaneously, all establish that any release did not release any obligations under the investment banking agreement.

14. EAG's motion in limine should be granted and ASCO's cross-motion for leave to file a motion for summary judgment should be denied.

_____
TIMOTHY E. BROG

Sworn to before me this
26th day of March 2008

_____
Notary Public

DAVID C. BURGER
Notary Public, State of New York
No. 02BU5031068
Qualified in New York County
Commission Expires July 25, 12/13/10

6