**MORGENSTERN FISHER & BLUE, LLC**

ATTORNEYS AT LAW
885 THIRD AVENUE
NEW YORK, NEW YORK 10022
TELEPHONE: (212) 750-6776
FACSIMILE: (646) 349-2816

ERIC B. FISHER
ADMITTED IN NEW YORK
EFISHER@MFBNYC.COM

March 31, 2008

**Via ECF and Federal Express**

The Honorable Andrew J. Peck
United States Magistrate Judge
United States Courthouse
500 Pearl Street, Room 1370
New York, New York 10007

      Re: *The Edward Andrews Group, Inc. v. Addressing Services Company, Inc.*
           Case No. 07 Civ. 4607 (AJP)

Dear Judge Peck:

      This letter is written on behalf of ASCO[1] in reply to EAG's opposition to ASCO's motion for leave to file a summary judgment motion and for other relief.

      EAG's complaint in the Prior Action states that EAG released ASCO. This statement is fully consistent with the Consulting Agreement, which refers to an exchange of releases between the parties thereto, and Michael Rittlinger's testimony in this action and in the Prior Action. In response, Timothy Brog's reply affidavit asserts that EAG's prior pleading is "mistaken." Reply Affidavit of Timothy E. Brog ¶ 3. Contrary to the Consulting Agreement and EAG's prior admission, Mr. Brog reiterates the incorrect claim that "EAG never agreed to release ASCO." *Id.* ¶ 4.

      The unambiguous statement in EAG's Prior Complaint does not appear to have been inadvertent or mistaken. Indeed, in support of its successful motion for summary judgment in the Prior Action, EAG argued:

> Negotiations between Rittlinger and Brog ultimately resulted in ASCO and EAG executing the Consulting Agreement which enabled ASCO's deal with Klein to be completed and resolved all disputes concerning the EAG/Klein Agreement and EAG's rights to participate in the Business Opportunity…<u>Releases were also</u>

---

[1] Terms not defined herein have the meaning set forth in ASCO's March 20, 2008 memorandum of law in support of its cross-motion.

exchanged among the parties. *Rittlinger Tr., at pp. 52/18-53/3.* (underscoring added).[2]

The above assertion was included in EAG's summary judgment motion, and in its complaint, because the release of ASCO constituted, at least in large part, the consideration received by ASCO in exchange for the promise to pay EAG $8300 per month over a sixty-month period. Accordingly, the district court's enforcement of the Consulting Agreement and its award of summary judgment rest implicitly on these representations to the Court. EAG should be estopped from taking a contrary position in this litigation. *See, e.g., In re Galerie Des Monnaies, Ltd., 62 B.R. 224, 225, 226 (S.D.N.Y. 1986)* (judicial estoppel notwithstanding absence of litigated result, because court approval implicitly required adoption of party's position); *Bates v. Long Island Railroad Co., 997 F.2d 1028, 1038 (2d Cir. 1993)*("first, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court *in some manner*") (emphasis added).[3]

EAG's opposition to ASCO's cross-motion altogether fails to address the unambiguous language in the Consulting Agreement, which indicates that the parties to that agreement – EAG and ASCO – "shall execute" mutual releases. The plain import of this contractual language is that EAG released, or at least was legally obligated to release, ASCO.

EAG similarly cannot avoid the plain meaning of the release itself, which bars EAG's claims under the Investment Banking Agreement because that agreement arises from and concerns the business opportunity with Jeffrey Klein. Indeed, EAG cannot possibly negate the language of the release by offering extraneous evidence concerning the supposed true intent of the parties since, in this action, EAG has flatly denied that there was any release. Accordingly, there is no one from EAG who could testify about the supposed intent of the parties. In any event, such testimony would be improper because the release is clear on its face.

Finally, in the event that ASCO's proposed summary judgment motion is not authorized by this Court, EAG argues that, because it successfully evaded discovery concerning the Robinson Brog firm's role in drafting the releases, it should not have to

---

[2] For the Court's convenience, a copy of EAG's Memorandum of Law in Support of Motion for Partial Summary Judgment dated April 29, 2005, which was filed on the docket in the Prior Action, is attached hereto as Exhibit A.

[3] Of course, even if this Court finds that judicial estoppel does not bar EAG from asserting an inconsistent position at trial, these party admissions nonetheless constitute compelling evidence that EAG released ASCO.

Hon. Andrew J. Peck
March 31, 2008
Page 3

endure questioning at trial about that issue. EAG cites no authority in support of that meritless argument.

                                              Respectfully,

                                              /s/ Eric B. Fisher

                                              Eric B. Fisher

cc: David Burger, Esq.

# EXHIBIT A

Case 1:07-cv-04607-AJP   Document 71   Filed 03/31/2008   Page 4 of 16

David C. Burger (DB-8666)
ROBINSON BROG LEINWAND GREENE
    GENOVESE & GLUCK P.C.
1345 Avenue of the Americas
New York, NY 10105
(212) 603-6300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE EDWARD ANDREWS GROUP INC.,  :

                    Plaintiff,  :    04 Civ. 6731(LTS)

     -against-                    :

ADDRESSING SERVICES COMPANY, INC.,  :

                    Defendant.  :
------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S FIRST CLAIM FOR BREACH OF CONTRACT

### PRELIMINARY STATEMENT

Plaintiff The Edward Andrews Group Inc. ("EAG") submits this memorandum of law in support of its motion for partial summary judgment with respect to its first claim against defendant Addressing Services Company, Inc. ("ASCO") for breach of contract. It is undisputed that:

(a) the parties executed a written consulting agreement ("Consulting Agreement") that provided for ASCO to make payments to EAG in the amount of $8,300 per month for a period of sixty (60) months;

(b) ASCO made the required payments to EAG for a period of three (3) months;

(c) ASCO failed to make the $8,300 payment due in June 2004 and has failed to make any subsequent payment pursuant to the Consulting Agreement;

(d) the Consulting Agreement provides that, upon ASCO's failure to make any payment, EAG shall give notice of such failure and if ASCO still has not made the payment due within ten (10) days after such notice, all remaining payments shall be automatically accelerated and become due and payable;

(e) on or about June 8, 2004, EAG provided written notice to ASCO of ASCO's failure to make the June 2004 payment;

(f) ASCO did not make the June 2004 payment within ten (10) days of the written notice from EAG and therefore all remaining payments due under the Consulting Agreement automatically became due and payable.

EAG therefore moves for summary judgment on its first claim for breach of contract that seeks money damages in the amount of $473,100.00, plus interest, representing the automatically accelerated total of the remaining payments due under the Consulting Agreement.

Granting summary judgment on the first claim would effectively resolve this entire action. The Consulting Agreement that is the subject of this action includes a term providing that the party most prevailing in any litigation arising with respect to the Consulting Agreement shall be entitled to an award of its attorneys' fees and expenses. EAG's second claim is for its attorneys' fees and expenses pursuant to that Consulting Agreement. EAG also plead a third claim for quantum meruit and a fourth claim for unjust enrichment, but those claims are

2

in the alternative to the first claim for breach of contract, and therefore will be discontinued upon a judgment being entered in favor of EAG on the first claim. ASCO did not plead any counterclaim.

## STATEMENT OF FACTS

ASCO is engaged in the business of direct mailing. *Complaint ¶ 5, Answer ¶ 5 (a copy of the complaint is attached as exhibit A, and a copy of the answer is attached as Exhibit B to the accompanying affidavit of David C. Burger, sworn to on April 29, 2005 ("Burger Affidavit")).* EAG, through one of its principals, Timothy Brog ("Brog"), introduced ASCO to Jeffrey Klein ("Klein") in late July, 2003. *Complaint ¶ 6; Answer ¶ 6; Rittlinger deposition transcript ("Rittlinger Tr."), at pp. 5/21-6/2 (copy attached as Exhibit C to the Burger Affidavit).* Brog told ASCO's president, Michael Rittlinger ("Rittlinger"), that he had a business opportunity for ASCO that involved Klein, and Rittlinger said that he was definitely interested because years ago he had actually tried to get the business that Klein was involved with. *Rittlinger Tr., at p. 6/3-22.* Brog and Klein were introducing Rittlinger and ASCO to a completely different market from the business then being conducted by ASCO. *Rittlinger Tr., at p. 26/16-25.*

In August or September, 2003, Rittlinger received and read a copy of an agreement between EAG and Klein entitled: Agreement Of Confidentiality, Non-Competition And Non-Circumvention, dated June 20, 2004 ("EAG/Klein Agreement"). *Rittlinger Tr., at pp. 29/23-32/11. A copy of the EAG/Klein Agreement is attached as Exhibit D to the Burger Affidavit.* The EAG/Klein Agreement provided, inter alia, that:

3

> "In consideration for (i) the information which is being divulged to [Klein] by [EAG], (ii) the assistance and advice with respect to various opportunities available to Klein in the Statement Processing, Collection Agency and Mail Industry in general and (iii) the introduction by EAG of Klein to its contacts ... Klein agrees that neither he nor any partner or agent (collectively, the 'Klein Group'), shall take any action, or cause another to take any action, in any capacity, with respect to EAG's contacts, including entering into any transaction or relationship with EAG's Contacts, without Klein agreeing to a fee arrangement satisfactory to EAG."

After Brog, Rittlinger and Klein initially met, and after further communications back and forth among the parties, Klein asked to secretly meet with Rittlinger without Brog. Klein asked Rittlinger not to tell Brog that they were meeting, and Klein told Rittlinger that he wanted to fire Brog. *Rittlinger Tr. pp. 17/20-20/2*. At a second meeting between Rittlinger and Klein without Brog, the EAG/Klein Agreement was discussed. Rittlinger believed it was probably going to get ugly with lawsuits or threats between Brog and Klein with respect to the EAG/Klein Agreement. *Rittlinger Tr, at pp. 35/18-36/23*. In order to try to avoid having things get ugly, Rittlinger told Klein that:

> "I [Rittlinger] would take it on the chin, I would deal with Tim [Brog], you know, about compensation. ... I would sit down with Tim and, you know, try to make some -- make some resolution out of this."

*Rittlinger Tr., at pp. 36/24-37/13*.

Negotiations between Rittlinger and Brog ultimately resulted in ASCO and EAG executing the Consulting Agreement which enabled ASCO's deal with Klein to be completed and resolved all disputes concerning the

4

EAG/Klein Agreement and EAG's rights to participate in the Business Opportunity. *Rittlinger Tr, pp. 43/13-47/9; Complaint ¶ 13; Answer ¶ 13.* Releases were also exchanged among the parties. *Rittlinger Tr., at pp. 52/18-53/3.*

The Consulting Agreement, at ¶ 1, provided, inter alia, that "Client [ASCO] shall pay Consultant [EAG] $8,300.00 per month for a period of sixty (60) months ... The first payment shall be due and payable upon the execution of this Agreement and the remaining fifty nine (59) payments shall be paid by Client on the first day of each successive month...." *Complaint ¶ 15; Answer ¶ 15.*

ASCO paid to EAG the first three installment payments of $8,300 for a total of $24,900. *Complaint ¶ 16; Answer ¶ 16.* ASCO failed to pay to EAG the June 2004 installment payment. *Complaint ¶ 17; Answer ¶ 17.* The Consulting Agreement, at ¶ 6, provided, inter alia, that:

> "If [ASCO] fails to make payment for a particular month, [EAG] shall provide written notice of such failure. In the event that payment is not made within 10 days after such notice to [ASCO], all remaining payments shall automatically be accelerated and become due and payable and not be subject to Section 3 above."

*A copy of the Consulting Agreement is attached to the Complaint, which is attached as Exhibit A to the Burger Affidavit.*

On or about June 8, 2004, EAG provided to ASCO written notice of ASCO's failure to make the June 2004 installment payment ("Default Notice"). The Default Notice was sent to ASCO via Federal Express. *Complaint, ¶ 21;*

5

*Answer,* ¶ *21.*[1] ASCO failed to make the June 2004 installment payment within ten days after receipt of the Default Notice. *Complaint,* ¶ *22; Answer,* ¶ *22.*

Rittlinger testified that the reason the June 2004 installment payment was not made was because ASCO's business venture with Klein was not financially successful. *Rittlinger Tr., at pp. 65/5-68/22.*

## ARGUMENT

### SUMMARY JUDGMENT SHOULD BE GRANTED ON EAG'S FIRST CLAIM FOR BREACH OF THE CONSULTING AGREEMENT

Summary judgment is to be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 256 (1986). A fact is considered material to summary judgment "if it might affect the outcome of the suit under the governing law," and an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. 258 F.3d 62, 69 (2d Cir. 2001). The Second Circuit has explained, however, that the "party against whom summary judgment is sought ... 'must do more than simply show that there is some metaphysical doubt as to the material facts... The nonmoving party must

---

[1] The Complaint also alleges that EAG made numerous telephone calls and left telephone messages for ASCO concerning the missed June 2004 payment before serving the Default Notice. The Complaint further alleges that ASCO failed to respond to those calls and messages. Complaint, ¶ 20.

6

come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

It is undisputed that:

(a) EAG and ASCO executed the Consulting Agreement;

(b) ASCO was obligated to pay $8,300 per month to EAG under the terms of the Consulting Agreement;

(c) ASCO made the first three payments due under the Consulting Agreement;

(d) ASCO failed to make the payment due in June 2004, and has failed to make any subsequent payment;

(e) the Consulting Agreement provides that all remaining payments will be automatically accelerated and become due and payable if ASCO fails to make a payment when due and fails to make the missed payment within ten days after receiving a written notice from EAG concerning the missed payment;

(f) EAG sent the written Default Notice concerning the missed June payment to ASCO on or about June 8, 2004; and

(g) ASCO failed to make the June 2004 payment within ten days of the Default Notice.

Those undisputed facts establish that ASCO breached the Consulting Agreement and that EAG is entitled to a judgment for the total amount

7

of the remaining payments under the Consulting Agreement that have been automatically accelerated.

The first, and only, affirmative defense plead in ASCO's Answer states as follows:

> "The complaint fails to state a claim for breach of contract as the consideration alleged in the Consulting Agreement was misrepresented by plaintiff which, upon information and belief, had no right to participate in the 'Business Opportunity' referred to therein and did not provide valuable or beneficial services to defendant but, on information and belief, merely had an agreement with non-party Jeffrey Klein ('Klein') to introduce Klein to plaintiff's contacts, including ASCO, and had an agreement to agree with Klein on a satisfactory fee if Klein entered into a transaction or relationship with any such contact."

*Answer,* ¶ *43.*

ASCO's affirmative defense is defeated by Rittlinger's own deposition testimony. The affirmative defense consists of two arguments:

First, that the consideration in the Consulting Agreement was misrepresented because EAG had no right to participate in the Business Opportunity and "on information and belief" EAG merely had an agreement with Klein to introduce Klein to EAG's contacts and an agreement to agree as to a fee if Klein entered into a relationship with any such contact; and

Second, that EAG did not provide valuable or beneficial services to ASCO.

8

There is no genuine, material question of fact with respect to either argument, and both arguments fail based on the language of the Consulting Agreement and Rittlinger's own deposition testimony.

The Consulting Agreement does not state that EAG had a right to participate in the Business Opportunity, but rather notes that the Consulting Agreement is being executed to, in part, "resolve the dispute over Consultant's [EAG's] rights to participate in the Business Opportunity." The full provisions of the Consulting Agreement relating to the consideration for that Agreement state as follows:

> "WHEREAS, Consultant [EAG] introduced to Client [ASCO] a potential opportunity (the 'Business Opportunity') to expand its current business into first party collection and mailing services, including certain individuals to implement such expansion; and Consultant was to be a principal in such activities, and now is willing to forgo same; and
>
> "WHEREAS, Client has consulted with the Consultant on various matters pertaining to expanding the operation of its business as it relates to first party collection, and statement processing, all related to the mail industry; and
>
> "WHEREAS, Client desires to compensate Consultant for its valuable and beneficial services provided to Client up to the date hereof, over a five (5) year period for services already provided and completed and to resolve the dispute over Consultant's rights to participate in the Business Opportunity,
>
> "NOW THEREFORE, in consideration of the mutual covenants and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:...."

9

*A copy of the Consulting Agreement is attached as Exhibit A to the Complaint, which is attached as Exhibit A to the Burger Affidavit.*

Rittlinger testified that he received and read a copy of the EAG/Klein Agreement in the summer of 2003, before the Consulting Agreement was executed on January 13, 2004. *Rittlinger Tr., at pp. 29/23-32/11.* Rittlinger also discussed the EAG/Klein Agreement with Klein prior to the execution of the Consulting Agreement. *Rittlinger Tr., at pp. 35/18-36/23.* Rittlinger therefore was fully aware of the terms of the EAG/Klein Agreement before he executed the Consulting Agreement. It is something less than candid for ASCO to assert in its affirmative defense that the terms of the EAG/Klein Agreement were somehow misrepresented or that ASCO can only plead "on information and belief" as to the terms of the EAG/Klein Agreement.

In an apparent attempt to circumvent the EAG/Klein Agreement, Klein succeeded in cutting EAG out of Klein's negotiations with ASCO. *Rittlinger Tr., at pp 17/20-20/1.* Rittlinger reasonably appreciated that things could therefore get ugly with lawsuits or threats between Brog and Klein concerning the EAG/Klein Agreement. *Rittlinger Tr., at pp. 35/18-36/23.* In order to try to avoid having things get ugly, Rittlinger told Klein that:

> "I [Rittlinger] would take it on the chin, I would deal with Tim [Brog], you know, about compensation. ... I would sit down with Tim and, you know, try to make some – make some resolution out of this."

*Rittlinger Tr., at pp. 36/24-37/13.*

As a businessman doing what had to be done in order to quickly consummate a deal with Klein, Rittlinger engaged in negotiations with Brog and ultimately executed the Consulting Agreement and releases. *Rittlinger Tr., at pp. 43/13-47/9, 52/18-53/3*. The "whereas" clauses of the Consulting Agreement correctly summarize the grounds upon which that Agreement was executed.

The second argument stated in ASCO's affirmative defense is that EAG did not provide any valuable or beneficial services to ASCO. The Consulting Agreement plainly recites valuable and beneficial services provided by EAG to ASCO, including the introduction of the Business Opportunity and individuals to implement it, and consultation with respect to the expansion of ASCO's business. ASCO should be barred from challenging the plain terms of the Consulting Agreement in the absence of an allegation of fraud, and there has been no such allegation. Moreover, Rittlinger testified that Brog and Klein were introducing Rittlinger and ASCO to a completely different market from the business then being conducted by ASCO. *Rittlinger Tr., at p 26/16-25*.

ASCO's sole affirmative defense does not raise any material, genuine question of fact that would prevent summary judgment from being entered based on ASCO's undisputed and indisputable breach of the Consulting Agreement.

11

## CONCLUSION

For all of the reasons stated above and in the exhibits attached to the accompanying Burger Affidavit, and in the papers and proceedings heretofore had herein, EAG's motion for summary judgment with respect to its first claim for breach of contract should be granted, together with such other and further relief in favor of EAG as this Court deems just and proper.

Dated: New York, New York
April 29, 2005

                ROBINSON BROG LEINWAND GREENE
                GENOVESE & GLUCK P.C.

                By: _____
                    David C. Burger (DB-8666)
                1345 Avenue of the Americas
                New York, NY 10105
                (212) 603-6361
                Attorneys for Plaintiff
                The Edward Andrews Group Inc.